CARL M. FREEMAN ASSOCIATES, INC. AND
AMPROP, INC. *v.* JOHN J. MURRAY

[No. 756, September Term, 1972.]

*Decided July 13, 1973.*

The cause was argued before MORTON, MOYLAN and
SCANLAN, JJ.

*Robert C. Heeney*, with whom were *Heeney, McAuliffe & Rowan* on the brief, for appellants.

*Jerold H. Fishman*, with whom were *Wolman, Fishman, Gushee & Shepherd* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Appellants, Carl M. Freeman Associates, Inc.,[1] and Amprop, Inc.,[2] appeal from a judgment of the Prince George's County Circuit Court which awarded $15,000 in compensatory damages and $25,000 in punitive damages to the appellee, John J. Murray, in his suit for malicious prosecution brought against Freeman Associates, Amprop and Donald E. Green, an employee of Freeman Associates. The case was tried before a jury which rendered a verdict in appellee's favor for $15,000 in compensatory damages and $35,000 in punitive damages. Following appellants' motion for a new trial or remittitur, the trial judge (Honorable James H. Taylor) granted a remittitur of $10,000 as to punitive damages only.

This appeal presents two questions for our decision.[3]

---

1. Hereinafter sometimes referred to as "Freeman Associates."
2. Hereinafter sometimes referred to as "Amprop."
3. Our examination of the record reveals that the declaration sought $10,000 compensatory damages, but that the jury awarded $15,000 in compensatory damages. Rule 1073 a provides that: "A judgment will not be reversed because the verdict was rendered for a larger sum than the amount claimed in the declaration if the plaintiff in the action in the lower court amends the record by entering in this Court a release of the excess over the sum claimed in the declaration." It has long been the law of this State that if a plaintiff recovers a verdict in excess of the damages laid in the declaration a remittitur by the trial court is proper. Harris v. Jaffray, 3 Har. & J. 543 (1815); Attrill v. Patterson, 58 Md. 226, 260-261 (1882); Finch v. Mishler, 100 Md. 458, 462, 59 A. 1009 (1905). This appears to be the general rule. *See, e.g.,* Elliott v. Sherman, 147 Me. 317, 87 A. 2d 504 (1952), and Barbato v. Vollmer, 273 App. Div. 169, 76 N.Y.S.2d 528 (1948). The appellants, however, did not raise the issue of the excess of the judgment over the *ad damnum* in the court below. Nor did they press the point in their brief and oral argument in this Court. Accordingly, we are precluded from considering the question by virtue of both Rule 1085 and Rule 1031 c 2. We express no opinion as to whether the appellants still could seek and obtain relief under Rule 625 a, under which the trial court retains revisory power and control over the judgment in case of "mistake or irregularity." *Cf.* Mutual Benefit Society of Baltimore, Inc. v. Haywood, 257 Md. 538, 541, 263 A. 2d 868 (1970).

These are:

(1) Whether this Court can reverse the award of compensatory damages below on the grounds that the jury's verdict was grossly excessive?

(2) Whether the award of punitive damages against the appellants was unwarranted, in that there was no showing of actual malice on their part or on the part of their agent?

For the reasons stated in the remainder of this opinion, we conclude that the answer to both questions must be in the negative, and we affirm the judgment.

## THE FACTS

In July 1971, Amprop owned an apartment complex in Prince George's County, known as Seven Oaks Farms, a complex which Freeman Associates then managed for Amprop. At that time, Freeman Associates had in its employ as a security guard at Seven Oaks Farms, Donald E. Green. At that time also, the appellee was a tenant in the same apartment complex.

In the early evening of July 24, 1971, several persons, all in their early twenties, had gathered outside of an apartment in the complex. Some of them were drinking beer, but there is no indication in the record that anyone in the group was drunk, acting disorderly or using loud or profane language. Mr. Green, the security guard, approached the group and told them to go inside the apartment, a request with which they complied. A little while later, a few members of the group went out on the balcony of one of the apartments. Subsequently, Mr. Green approached these persons and ordered them to go inside. Again, they complied with Green's request. They did ask him who was complaining about their activity and Green replied that no one had complained, but that they were bothering him. There was no further conversation or contact between Mr. Green and the other parties on the evening of July 24, 1971.

The next day, Green obtained the names of the residents of the apartment from the mailbox and applied for arrest

warrants for all those persons listed thereon, charging them with being intoxicated in a public place and causing a disturbance. The appellee was one of those listed as living in the apartment. Because of this, he received a notice on August 10, 1971, that a warrant had been issued for his arrest for an offense that he had allegedly committed on the evening of July 24th. This puzzled the appellee because on the evening in question he had been a guest in the home of his uncle in Chicago, Illinois. Indeed, he had been in Chicago from July 21st through August 2nd, 1971, and had not returned to the State of Maryland during that period.

The appellee, nevertheless, obeyed the notice he had received and appeared at the sheriff's office in Prince George's County. There, he was fingerprinted, photographed and charged with being intoxicated in a public place and causing a disturbance. He was detained for $3^{1}/_{2}$ hours before he was permitted to post bond and depart.

Ultimately, after he and his counsel had conferred with an Assistant State's Attorney for Prince George's County, the charges against him were *nol-prossed*. At trial, the Assistant State's Attorney, who testified as a witness for the appellee, said the determination to *nol-pros* the charges was based on the fact that no crime had been committed and, indeed, he regarded the incident as "ridiculous" and "foolish." The Assistant State's Attorney reached that conclusion after talking with Green, the security guard of Freeman Associates who swore out the warrant for the appellee's arrest.

At the trial of the case certain significant stipulations were agreed to, including stipulations: that "the plaintiff, John J. Murray, was innocent of the charge of disorderly intoxication;" that "Donald E. Green was the agent of Carl M. Freeman Associates, Inc. on or about July 24, 1971;" that Green "was employed as a security guard on or about July 24, 1971 at an apartment development in which the appellee was a tenant;" that "Donald E. Green was acting within the scope of his employment when he brought charges against the plaintiff, John J. Murray, for disorderly intoxication;" and that making arrests and swearing out warrants or

complaints "was within the scope of the employment of Donald E. Green."

At the time of the incident involved in this case, Murray was a petty officer in the United States Navy. He had no prior criminal record, had never been charged with a crime and had not been disciplined during the course of his Navy career. He testified that he became extremely nervous and upset and worried about the effect of an arrest on his job in the Navy and on his security clearance. There was testimony that the appellee had become more nervous and stuttered more since his arrest. In contesting the charges against him, appellee expended $250.00 for legal services and lost four days from his work.

There was testimony that when an arrest is made in Prince George's County, copies of the arrest record, photographs and fingerprints are maintained by the police and copies thereof sent to the F.B.I., even though the charges are dismissed. The Assistant State's Attorney testified that there was nothing that the appellee could do to expunge those records. A clerk in the District Court for Prince George's County testified that the arrest records are open to the public, even though charges are dropped and that employers and representatives of the Federal Bureau of Investigation do come in to look at the court records.

## THE AWARD OF COMPENSATORY DAMAGES WILL NOT BE REDUCED

Appellants argue vigorously that, because the plaintiff was able to show out-of-pocket expenses of only $250.00 for attorney's fees and a few days of lost wages, the jury's award of $15,000 in compensatory damages was grossly excessive. They ask that we reduce that award. However, as the appellants themselves seem to concede, such a request is one to which we cannot accede. The Court of Appeals has frequently reiterated its determined disinclination to review the amount of a jury's award of damages in a tort action. The late Judge Finan, after reviewing the cases and citing fourteen prior, representative decisions, stated in

*Kirkpatrick v. Zimmerman,* 257 Md. 215, 218, 262 A. 2d 531 (1970) that:

> "We know of no case where this Court has ever disturbed the· exercise of the lower court's discretion in denying a motion for a new trial because of the inadequacy or excessiveness of damages."

Judge Finan's observation remains true. In *D. C. Transit System v. Brooks,* 264 Md. 578, 588, 287 A. 2d 251 (1972), the Court again adverted to the controlling cases, including *Kirkpatrick v. Zimmerman, supra,* and, citing *Rephann v. Armstrong,* 217 Md. 90, 93, 141 A. 2d 525 (1958), said:

> "The trial court refused a new trial sought on the ground that the verdicts were excessive, and it is not our function or right, even were we disposed to do so, to pass on his action in this respect."

The Court then went on to turn aside D. C. Transit's attack on the size of a verdict rendered in a malicious prosecution case. *Id.* at 589-590.

In other jurisdictions, including our neighbor, the District of Columbia, there appears to be a judicial policy that large verdicts in actions for malicious prosecution should be viewed with more concern and examined more critically for excessiveness than verdicts in other tort actions. *Mills v. Levine,* 114 A. 2d 546, (D.C. Mun. App. 1955), *affirmed in part,* 233 F. 2d 16 (1956), *cert. denied,* 352 U. S. 858 (1956). No such policy or rule prevails in Maryland, however. Therefore, even if we were to conclude that an award of $15,000 for compensatory damages in this case was excessive in the light of the evidence presented, we would be barred by a legion of decisions of the Court of Appeals from reversing or reducing the judgment. *Kirkpatrick v. Zimmerman* at 218, and see the cases cited therein.[4]

---

4. The existence of an arrest record could have a damaging effect on a person's reputation. Furthermore, the appellee in this case experienced mental pain and suffering on becoming aware of the false charges which Green had preferred against him. Also, the arrest apparently caused an

## MALICE IS INFERRED AND SUPPORTS
## THE AWARD OF PUNITIVE DAMAGES

Appellants' second contention is that there was insufficient proof of malice on their part to support an award of punitive damages. We disagree.

The appellants have stipulated that the security officer, Mr. Green, was acting within the scope of his employment when he applied for an arrest warrant against the appellee. Despite this concession, appellants contend that an award of punitive damages is not recoverable against an employer unless he authorizes, ratifies or participates in, the acts of his agent which form the basis of a suit for malicious prosecution. For this contention, they cite *Safeway Stores v. Barrack*, 210 Md. 168, 122 A. 2d 457 (1956). As we read *Safeway Stores*, the decision rebuffs more than it supports appellants' contention. In that case, the Court of Appeals affirmed a judgment in an action for malicious prosecution and false imprisonment by an appellee who had been charged by a Safeway employee with stealing products from one of the chain's stores, of which charge he was found not guilty in a trial before a magistrate. During the course of its opinion, the Court of Appeals observed:

> "The appellant strongly attacks the award of punitive damages both as against Smith and his employer. Although the allowance of punitive damages is somewhat anomalous and has been rejected in a few states, it has been generally recognized. *Prosser, Torts* (2d ed.), p. 9. It has long been recognized in Maryland. In *Bernheimer v. Becker*, 102 Md. 250, a case of assault and false imprisonment, it was said that to justify an award of punitive damages there must be circumstances tending to show that the wrong was inflicted maliciously or wantonly or with circumstances of

---

aggravation of a pre-existing condition of nervousness and stuttering. Under those circumstances, reasonable men could differ as to whether the jury's award of compensatory damages was excessive. As indicated in the main text of this opinion, *supra*, however, we cannot consider that question.

contumely and indignity, citing *Sloan v. Edwards,* 61 Md. 89, 100. In *Heinze v. Murphy, supra,* a case of assault and false imprisonment against a policeman, it was said (p. 434) that 'where damages beyond compensation, to punish the party guilty of a wrongful act, are asked, the evidence must show wanton or malicious motive, and it must be actual and not constructive or implied.' *On the other hand, in McNamara v. Pabst, 137 Md. 468, 473, a case of malicious prosecution, it was held that a prayer which did not require a finding of malice as a prerequisite to punitive damages was not defective, since such a finding would be implicit in a verdict for the plaintiff, which would necessarily include a finding of malice.*

"The reasoning that would support an award of punitive damages against Smith would not necessarily apply to his employer. Some courts have held that a principal is not liable for punitive damages unless the principal authorizes, ratifies or participates in the act complained of. *Lake Shore &c. Railway Co. v. Prentice,* 147 U. S. 101; *Prosser, Torts* (2d ed.), p. 21; *Restatement, Torts,* § 909. Cf. *Wardman-Justice Motors v. Petrie,* 39 F. 2d 512 (D. C.), and *Safeway Stores v. Gibson,* 118 A. 2d 386, 388 (Mun. C. A., D. C.), in which cases the courts found evidence of express authorization or ratification from the terms of employment and the retention of the agent after the incident was reported. *But the Maryland cases take a less strict view. In Boyer & Co. v. Coxen, 92 Md. 366, 371, punitive damages were allowed against an employer in an assault case, where there was no evidence of authorization, participation or ratification.* There was, of course, evidence that the servant was acting in furtherance of the master's business, although his action in beating the plaintiff with a wrench was 'wanton, high-handed and outrageous.' See also *Dennis v. Baltimore Transit Co.,* 189 Md. 610, 616, and *Balt. &*

*Yorktown Turn. v. Boone,* 45 Md. 344." (Emphasis added.) *Id.* at 175-177.

The conclusion we draw from the careful summary of the law which the Court of Appeals set out in *Safeway Stores,* as quoted above, is that in a suit for malicious prosecution "malice may be inferred from a lack of probable cause" (*id.* at 175) and, accordingly, punitive damages may be awarded against the employer without any affirmative proof that he authorized, participated in or ratified the tortious act of his employee in instituting the prosecution. An award of punitive damages against an employer for malicious prosecution can be supported by the mere showing that his employee was acting in the scope of his employment and that the latter acted without probable cause. Both of these elements exist in this case.

Green had the prior consent or approval by the appellants to make arrests and to swear out warrants as part of his duties as a security guard. Acting without probable cause and, indeed, quite recklessly, Green applied for arrest warrants for persons whose names were listed on an apartment house mailbox. The State's Attorney testified as to the lack of probable cause for the charges brought by Green and the case against Murray was *nolle prossed* on this ground. From this demonstrable lack of probable cause, malice on Green's part may be inferred and that malice was properly attributable to the appellants, his employers. *McNamara v. Pabst,* 137 Md. 468, 473-474, 112 A. 812 (1921). There was thus no error in the jury's award of punitive damages, nor on the part of the trial court in refusing appellants' request to take the question of such damages from the jury.

Embraced within appellants' claim that an award of punitive damages against them was unwarranted, is a peripheral complaint that "unusually large punitive damages" were granted in this case. Exemplary damages are awarded to punish the offending party and to serve as a deterrent or example to him and others. *Superior Construction Company v. Elmo,* 204 Md. 1, 104 A. 2d 581 (1954). Damages which may constitute proper punishment

or provide a sufficient deterrent in the case of a defendant of modest means may not serve those purposes so far as a more affluent defendant is concerned. Conversely, "a verdict that would scarcely be regarded by a wealthy man, might be ruinous to a poor man." *Bell v. Morrison,* 27 Miss. 68, 86 (1854). Thus, in the assessment of punitive damages it is proper to consider the pecuniary circumstances of the defendant. *Heinze v. Murphy,* 180 Md. 423, 431, 24 A. 2d 917 (1942); *Sloan v. Edwards,* 61 Md. 89, 100 (1883); and *see Evidence of Financial Worth and Apportionment of Exemplary Damages* (Note), 26 Md. L. Rev. 259, 268 (1966). An S.E.C. prospectus of Carl M. Freeman Associates, Inc. was introduced in evidence. It disclosed that Freeman Associates had assets of twenty-four million dollars, including two million dollars in cash on hand. Accordingly, even if the question were one which was within our province to determine, we would not be disposed to hold that the punitive damages granted in this case were so disproportionately large as to establish that their award was the result of passion, prejudice or bias on the part of the jury.

*Judgment affirmed; costs to be paid by appellants.*