RICHARD DERBY A/K/A RICHARD T. DERBY, JR.
v. FRANK P. JENKINS ET UX.

[No. 1018, September Term, 1975.]

*Decided July 27, 1976.*

The cause was argued before MOORE, LOWE and MASON, JJ.

*Hyman Ginsberg* and *Donald E. Johnson*, with whom were *Ginsberg & Ginsberg* on the brief, for appellant.

*L. Clark Ewing* and *H. Michael Hickson*, with whom was *Richard D. Harrington* on the brief, for appellees.

MOORE, J., delivered the opinion of the Court.

In this malicious prosecution action the appellees, Frank P. Jenkins and Mary Louise Jenkins, a retired couple, recovered a judgment in the Circuit Court for Dorchester County for compensatory damages of $30,000 and punitive damages of $20,000 against appellant, Richard T. Derby, Jr., a cousin of Mrs. Jenkins. The civil case was the outgrowth of the arrest, trial and acquittal of Mr. and Mrs. Jenkins upon a charge of grand larceny, initiated by appellant, involving the alleged theft of a sofa and a mirror reflector from the home of appellant's mother, Mrs. Nettie Derby, aged 86, also a cousin of Mrs. Jenkins but whom she called "Aunt Nettie."

Mr. Derby seeks a reversal of the judgment against him, contending (a) that he had consulted counsel prior to obtaining the arrest warrants and had probable cause as a matter of law; (b) that counsel for appellees was improperly permitted in opening statement to make reference to Mr. Derby's financial ability to withstand a judgment in the amount of the *ad damnum* and (c) that the question of punitive damages should not have been submitted to the jury. We reject appellant's contentions and shall affirm the judgment.

I

Mr. and Mrs. Jenkins lived for a number of years in Montgomery County where Mr. Jenkins was president of a

commercial enterprise and the couple were broadly engaged in church and community affairs. Upon his retirement in 1965 they moved to Talbot County. Mrs. Jenkins had been a visitor at "Belvoir," the home of Aunt Nettie in Dorchester County, and these visits became frequent after she and her husband took up residence in Talbot County. Mr. Derby had known the Jenkinses for 30 or 40 years and was engaged in farming in Dorchester County. His relationship with his mother, Nettie, was apparently strained and there is testimony that he did not enjoy complete access to the mother's residence for a long period of time.

In 1967 Mr. and Mrs. Jenkins moved to a smaller home in Talbot County. Not having sufficient wall space for an antique sofa which had been the property of her mother, Mrs. Jenkins testified that she was permitted by Aunt Nettie to place it at Belvoir. On another occasion, Mrs. Jenkins left a mirror reflector with Mrs. Derby with the apparent understanding that it would be returned to her whenever she wished.

As time passed, Aunt Nettie became enfeebled. In November, 1972, her son Richard, the appellant, was appointed guardian of her person and property by Order of the Circuit Court for Dorchester County. He was represented in these proceedings by Edward H. Nabb, an experienced attorney in Cambridge. Aunt Nettie was known to have made gifts over the years of some of her possessions, principally furniture, to various persons and her son, in his capacity as guardian, launched an effort to retrieve them with the assistance of attorney Nabb. Included among these items was a valuable antique desk which had been given by his mother to the daughter of Mr. and Mrs. Jenkins, an adult resident of Chevy Chase, Maryland. According to the testimony of Mr. and Mrs. Jenkins, this gift had been made some 14 years previously and Mrs. Jenkins candidly advised attorney Nabb that the desk had been given and accepted in good faith at a time when Mrs. Derby was in good health, both mentally and physically, and there was no legal nor moral justification for its relinquishment to Mrs. Derby.[1]

1. The appellant owned a one-third interest in the personal property at Belvoir because his father had died intestate in 1941.

Prior to this communication with Mr. Derby's counsel, Mr. and Mrs. Jenkins had moved again, this time to a larger home at St. Michaels in Talbot County. According to their testimony, appellant made a visit to their new residence and requested their cooperation in obtaining the return, by their daughter, of the antique desk. At that time he also offered them the use of a pickup truck so that they could transport their sofa and mirror reflector to their new and larger residence. Later on, according to their testimony, he withdrew this offer and informed them that "You will get your sofa when you get those things back that my mother gave away."

On July 11, 1973, Mr. and Mrs. Jenkins went to Belvoir. Aunt Nettie was asleep and the only other person present was her nurse, Eva Sellers. With the assistance of the son of a neighbor in St. Michaels, Mr. Jenkins placed the sofa and mirror reflector in a station wagon and transported them home. Derby appeared at Belvoir that evening and, upon learning from Mrs. Sellers of the activities of Mr. and Mrs. Jenkins earlier in the day, he communicated with attorney Nabb by telephone and also talked with him on the street near the Yacht Club in Cambridge. Thereafter Mr. Derby made application for separate arrest warrants for Frank P. Jenkins and Mary Louise Jenkins, which were issued by the District Court of Maryland for Dorchester County, charging them with grand larceny.

The Talbot County and Dorchester County sheriffs appeared at the home of Mr. and Mrs. Jenkins in St. Michaels after 10:00 p.m. as they were preparing to retire, and placed them under arrest. They were permitted to accompany the sheriffs in their own vehicle to the local jail at Cambridge, in Dorchester County, where they were "processed" and released on their own recognizance at midnight. Some two months later, they were acquitted after a trial at which appellant testified against them.

## II

With respect to appellant's first contention — that he was

entitled to a directed verdict [2] because probable cause was established as a matter of law — we note preliminarily the well-established elements of a case for malicious prosecution of a criminal charge:

a) a criminal proceeding instituted by the defendant against the plaintiff;

b) termination of the proceeding in favor of the accused;

c) absence of probable cause for the proceeding; and

d) malice — in this instance meaning that the defendant's primary purpose in instituting the criminal proceeding is other than that of bringing an offender to justice.

*Brewer v. Mele,* 267 Md. 437, 298 A. 2d 156 (1972); *Banks v. Montgomery Ward & Company, Inc.,* 212 Md. 31, 128 A. 2d 600 (1957); *Shipp v. Autoville Limited,* 23 Md. App. 555, 328 A. 2d 349 (1974).

Basically, the contention of appellant here is that there is no evidence legally sufficient to show that he acted without probable cause and, hence, he should have been granted a directed verdict. In the face of such contention we, of course, apply the fundamental rule that the evidence and inferences fairly deducible from the evidence must be viewed in the light most favorable to the parties against whom the motion is directed, here Mr. and Mrs. Jenkins. *Levine v. Rendler,* 272 Md. 1, 320 A. 2d 258 (1974); *Picone v. Talbott,* 29 Md. App. 536, 349 A. 2d 615 (1975). Of course, the burden of proof is on the plaintiffs to show that the defendant instituted the criminal proceeding without probable cause. In Maryland it is well established that this burden is not sustained in a malicious prosecution case where the instigator of the criminal proceedings in a proper case acted upon the advice of counsel. *Gladding Chevrolet, Inc. v. Fowler,* 264 Md. 499,

---

2. Mr. Derby moved for a directed verdict at the end of the plaintiffs' case and at the end of the entire case and the motion was denied. After the verdict he moved for judgment n.o.v. or for a new trial which, after hearing, was also denied.

287 A. 2d 280 (1972); *Kennedy v. Crouch*, 191 Md. 580, 62 A.
2d 582 (1948). The rationale of the rule as explained by Judge
Delaplaine in *Kennedy v. Crouch, supra,* is that if a person
who is contemplating the initiation of criminal proceedings
obtains the advice of counsel and acts in reliance upon such
advice "he is protected not only because the adviser can view
the facts calmly and dispassionately, but also because he has
the ability to judge the facts in their legal bearings." The
Court went on to delineate the factual showing necessary to
sustain the advice-of-counsel defense: .

> "Proof that he placed the facts fully and fairly
> before his counsel and acted upon his advice is a
> good defense to the charge of want of probable
> cause." At 587.

And, as Judge Smith emphasized in *Gladding Chevrolet,
supra,* "there must be no material fact concealed from the
attorney." (264 Md. at 507).

When Mr. Derby testified in his own behalf in the trial
below, he said that he had "told Mr. Nabb everything there
was to tell him" without specification, however, of the facts
he related. Upon cross-examination, he testified that he did
not know who was the owner of the sofa retrieved by Mr.
and Mrs. Jenkins and also quoted himself as saying to
counsel Nabb, "Ed Jenkins has removed the furniture."

The testimony of Mr. Nabb, counsel for some 20 years to
Mr. Derby, discloses that he was informed by appellant that
he had visited his mother on July 11, 1973, that as he left her
property he observed a pickup truck enter the road and that
upon his return later he discovered that two items of
furniture had been removed; that he gave counsel the names
of the people involved and stated that he had previously
advised them to remove nothing from the house. "I gathered
from him that he wanted the removal of property by any
person from those premises stopped. That he wanted to
recover what had been removed." In addition, counsel
testified:

> "I did not know the type of people that would
> remove the property and I tried to get from him a

description of them, and the only description I got was primarily of age; he described them as older people. I had no way of knowing whether they were vigorous old people or whether they were people who may be under mental disability, and I told Mr. Derby that he should work within the framework of the law, that he should not in anyway have any altercation or go visit these people, and the immediate legal move would be to have them charged with illegal entry into a property over which he had dominion and removal of property which he explained to me belonged to him and his mother, or to his mother, under my interpretation of the meaning of his guardianship.

"Mr. Derby at the time was somewhere between distraught, aggravated and annoyed, and I did not want him to have any direct contact with any of these people. That is the limit of my personal knowledge of what transpired. I did explain to him that he didn't go to the jail, he went to the District Court office, where he would be questioned by a trained commissioner who would further determine whether a warrant be issued, that it wasn't an automatic thing."

"My instructions to him were, my suggestions I would think rather than instructions were, that I, in my opinion, there had been an illegal entry of property over which he had dominion; either an entry by force or entry by subterfuge, and he had an obligation to stop this sort of thing. And by him having the people brought before the proper Court would certainly, in my opinion, stop it. I didn't want it to occur again in a day or week or month and Mr. Derby involved in what could be an altercation. I did instruct him, as I mentioned, that he would have to go before a commissioner. I had no idea that he would or would not attempt to get a warrant that night. As a matter of fact, my discussions with him had to do with the local

District Court, and I didn't tell him not to get a warrant that night, I presumed that the following day he would go to the District Court and either be given a warrant or be refused a warrant."

On direct examination [3] Mr. Nabb was also asked the following question with reference to his client's motivation:

"Q. Mr. Nabb, to your knowledge, did Mr. Derby have any other reason to take out warrants against the Jenkinses, other than getting the property back, bringing the offenders to justice, so to speak?

A. Yes, he told me he wanted to stop any further things being taken and intrusions."

It is thus apparent that appellant's attorney was aware to only a limited extent of the background of Mr. and Mrs. Jenkins and the long relationship between them and Mr. Derby. Apparently he was not told that they were relatives; nor was he informed that Mr. and Mrs. Jenkins had made clear to Derby their ownership of the furniture involved nor that he himself had recognized their ownership in the furniture previously and, indeed, had offered — and later withdrawn the offer — to provide the means for transporting the sofa from his mother's home to theirs.

It is clear upon the record before us that the jury in this case, following the clear and concise instructions of the court on this specific issue, could fairly find that Mr. Derby failed to place material facts fully and fairly before his counsel and did not act upon his advice in a bona fide manner. *Kennedy v. Crouch, supra. Cf. Gladding Chevrolet, Inc. v. Fowler, supra.* The claimed ownership by Mr. and Mrs. Jenkins in the two furniture items and Mr. Derby's own prior recognition of their claim were of critical importance and should clearly have been related by Mr. Derby. The defense was properly submitted to the jury and the evidence was sufficient to support the jury's determination.

---

3. There was no cross-examination of Mr. Nabb.

We note appellant's contention, urged in his reply brief, that the evidence showed a case of probable cause "independent of consultation with counsel." Probable cause has been frequently defined in the cases as a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty. *Banks v. Montgomery Ward & Company, Inc., supra; Gladding Chevrolet, Inc. v. Fowler, supra.* It is well settled that the existence of probable cause is a question to be determined as a matter of law by the court upon a given set of facts but when the facts are disputed the question must be submitted to the jury under adequate instructions. *Montgomery Ward & Company, Inc. v. Cliser,* 267 Md. 406, 298 A. 2d 16 (1972); *Shipp v. Autoville Limited, supra.* As the principle was stated in *Kennedy v. Crouch, supra:*

> "If the facts relied on to constitute probable cause, or the inferences to be drawn therefrom, are clear and undisputed, the question is one of law for the court; but if the evidence or inferences to be drawn therefrom are disputed, it becomes a mixed question of law and fact. *Nance v. Gall,* 187 Md. 656, 669, 50 A. 2d 120, 126."

In the instant case the issue of probable cause was properly submitted to the jury with appropriate instructions by the trial court. There was evidence, viewed in the light most favorable to the Jenkinses, that appellant knew that the chattels belonged to Mr. and Mrs. Jenkins and that no larceny could have been committed and therefore that he did not have proper cause to prosecute.

We must also reject appellant's contention (third in number) that the issue of punitive damages should not have been submitted to the jury. The existence of malice may be inferred by the jury from want of probable cause and is implicit in a verdict for the plaintiff in a malicious prosecution case. *Kennedy v. Crouch, supra; Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 175-76, 122 A. 2d 457 (1956). Since malice was properly before the jury, so also was the

issue of punitive damages. *Montgomery Ward & Company, Inc. v. Keulemans*, 275 Md. 441, 340 A. 2d 705 (1975).

### III

Prior to trial in this case a stipulation was entered into between the parties that if a judgment in the amount of $350,000 were to be rendered against Mr. Derby, his assets were sufficient to pay such a judgment.[4]

In his opening statement, counsel for Mr. and Mrs. Jenkins informed the jury, without objection, of the amount claimed in the *ad damnum* and he went on to explain that: "It will be stipulated that Mr. Derby's assets are sufficient to pay this, these judgments if rendered." This occurred toward the conclusion of the opening statement, the final paragraph of which was as follows:

> "This is an unusual type of case in that you are permitted, and this is the only reason I'm permitted to mention that there has been a stipulation, Mr. Derby's assets are sufficient to pay a judgment in the amount of the claim in this case. This is an unusual type of case because you are permitted to consider the Defendant's means. I don't know of any other type case in which this is permissible. And the reason, in my opinion, is a darn good one. It's obvious that for a person whose total assets are $10,000.00, a judgment against that person for $10,000.00 is ruinous, but a person whose total assets are $350,000.00, as will be stipulated, a judgment of $10,000.00 is relatively picayune."

Before commencing his own opening statement, counsel for Mr. Derby asked to approach the bench and the following colloquy occurred:

> (Mr. Johnson) Your Honor, if it please the Court, we would like to make an objection on the record as to counsel's statement in opening argument

---

4. We note that the damages claimed in the declaration aggregated $150,000 for each of the plaintiffs. The basis for the stipulation is not disclosed in the record.

pertaining to the picayune worth [sic] of the Defendant. We feel that this is prejudicial to the Defendant in the case and that it should not be admitted until after a decision is made as to whether there is malice in this case, that is whether or not the jury finds for the Plaintiff.

(The Court) You are saying that the jury should retire and bring in a verdict and then there be evidence as to punitive damages and financial worth?

(Mr. Johnson) Yes, sir."

The court overruled the objection. Thereafter, during the course of the trial, immediately prior to the testimony of Mary Louise Jenkins and in the presence of the jury, the stipulation was announced on the record and counsel for Mr. Derby stated, "Your Honor, we feel that that would be correct — the stipulation."

The financial ability of a defendant to withstand a verdict of punitive damages in a proper case is, of course, admissible.[5] *Sloan v. Edwards,* 61 Md. 89 (1883); *Heinze v. Murphy,* 180 Md. 423, 431, 24 A. 2d 917 (1942); *Carl M. Freeman Associates, Inc. v. Murray,* 18 Md. App. 419, 306 A. 2d 548 (1973). As Judge Scanlan stated in *Murray, supra:*

"Damages which may constitute proper punishment or provide a sufficient deterrent in the case of a defendant of modest means may not serve those purposes so far as a more affluent defendant is concerned. Conversely, 'a verdict that would scarcely be regarded by a wealthy man, might be ruinous to a poor man.' *Bell v. Morrison,* 27 Miss. 68, 86 (1854). Thus, in the assessment of punitive damages it is proper to consider the pecuniary circumstances of the defendant." 18 Md. App. at 428.

---

5. In joint defendant cases a number of courts do not permit a plaintiff to introduce evidence of the financial worth of *any* of the defendants. Washington Gas Light Co. v. Lansden, 172 U. S. 534 (1899). There is no appellate ruling in such a case in Maryland.

As appellees contend, evidence admissible at trial is ordinarily a subject for inclusion in an opening statement. This proposition, however, has its limitations. The distance can be vast between the mere assertion of entitlement to punitive damages and proof that the remedy is properly claimed. The plaintiff's proof at the trial must be sufficient to establish at least a *prima facie* case for punitive damages before evidence of the defendant's means may be offered. There is an obvious potential for prejudice on the issue of liability if a defendant's net worth is disclosed in opening statement and the court later rules that a case for punitive damages has not been shown. When punitive damages are claimed, references to the net worth of the defendant should not, in our judgment, ordinarily be made in opening statement and may provide grounds for a mistrial.

In this case, however, we find no basis whatever for appellant's claim of reversible error. There was solely an objection — without any motion for a mistrial nor request for a curative instruction. Furthermore, the stipulation concerning Mr. Derby's assets came into evidence thereafter with the concurrence of appellant's counsel. Surely under these circumstances any objection would have been waived. Maryland Rule 522 d 2; *S. & S. Building Corp. v. Fidelity Storage Corp.*, 270 Md. 184, 310 A. 2d 778 (1973). But beyond all this, as we have found, a case for punitive damages was clearly established and any impropriety in counsel's opening comments was cured.

> *Judgment affirmed; appellant to pay the costs.*