663 A.2d 1256

Thomas Richard FALCINELLI

v.

April CARDASCIA.

No. 126, Sept. Term, 1994.

Court of Appeals of Maryland.

Aug. 24, 1995.

Michael J. Budow (Thomas W. Plimpton, Anne K. Howard, Budow and Nobel, P.C., on brief), Bethesda, for appellant.

Richard F. Walsh, Bowie, for appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

When the jury in this negligence action returned a verdict in excess of the amount of damages claimed in the complaint, the stage was set for a civil procedure entanglement. The trial court permitted the plaintiff to amend to conform the amount claimed to the verdict, and the trial court later denied the defendant's motion for reconsideration of that grant of leave to amend. In order to unravel the contentions of the parties we must consider when final judgment was entered, the scope of review, and the power of a circuit court to enter judgment in the amount of a verdict that exceeds the ad damnum clause.

Appellee, April Cardascia (Plaintiff), sued appellant, Thomas Richard Falcinelli (Defendant), in the Circuit Court for Montgomery County alleging personal injuries suffered in an automobile accident. The complaint consisted of a single count. Its "demand for judgment for relief sought" was damages of $100,000. Maryland Rule 2–305. Plaintiff requested a jury trial. Approximately eighteen months later Plaintiff changed counsel.

The case came on for trial on the original complaint. The jury, by special interrogatories, returned a verdict in favor of Plaintiff, awarding $3,987.08 for reimbursement of medical expenses, $1,200 for reimbursement of lost wages, and $200,000 in noneconomic damages. No objection was made to the verdict prior to discharge of the jury. On the day the verdict

was returned, February 24, 1994, the clerk noted the verdict on the docket, and the clerk further made the following docket entry:

> "JUDGMENT ENTERED BY VERDICT IN FAVOR OF THE PLAINTIFF APRIL CARDASCIA AGAINST THE DEFENDANT THOMAS RICHARD FALCINELLI IN THE TOTAL AMOUNT OF TWO HUNDRED FIVE THOUSAND ONE HUNDRED EIGHTY SEVEN DOLLARS AND EIGHT CENTS ($205,187.08) AND COSTS."

Within ten days of February 24, Defendant moved in the alternative for a judgment notwithstanding the verdict,[1] for a new trial, or for a remittitur. In support of a judgment nw. v. Defendant argued insufficient evidence of primary negligence and of causation and that there was contributory negligence as a matter of law. In support of a new trial or remittitur Defendant argued that the verdict was excessive, saying in part that "[i]t may be that the Plaintiff would agree inasmuch as the figure of $100,000 was penned in her Complaint." After arguing that Plaintiff's symptoms were largely attributable to a preexisting condition, Defendant's memorandum concluded: "Failing all else, a substantial remittitur of far more than $105,187.08 should be ordered."

Plaintiff filed a memorandum in response to these motions in which she reviewed the evidence. In addition, Plaintiff filed a motion for leave to amend her complaint, together with a proposed amended complaint which changed the original complaint only by increasing the ad damnum to $205,187.08. The motion averred that, after filing the original complaint and while her symptoms continued unabated, Plaintiff was found to have "a permanent partial disability of ten percent (10%) based on the A.M.A. Guidelines for permanent disability."

---

1. Prior to July 1, 1984, under former Maryland Rule 563, this motion was a "Motion for Judgment N.O.V.," (*non obstante veredicto*). Effective July 1, 1984, under Md.Rule 2–532, the name was changed to "Motion for Judgment Notwithstanding The Verdict." We shall abbreviate the current name as "nw. v."

In support of the request for leave Plaintiff cited authority reflecting, in other contexts, the liberal approach to leave to amend, as well as Md.Rule 2–341. In relevant part Md.Rule 2–341 provides:

## "AMENDMENT OF PLEADINGS

"(a) **Prior to 15 Days of Trial Date.**—A party may file an amendment to a pleading at any time prior to 15 days of a scheduled trial date....

"(b) **Within 15 Days of Trial Date and Thereafter.**— Within 15 days of a scheduled trial date or after trial has commenced, a party may file an amendment to a pleading only by written consent of the adverse party or by leave of court. If the amendment introduces new facts or varies the case in a material respect, the new facts or allegations shall be treated as having been denied by the adverse party. The court shall not grant a continuance or mistrial unless the ends of justice so require.

"(c) **Scope.**—An amendment may seek to ... (7) make any other appropriate change. Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties."

Defendant responded to the motion for leave to amend by asserting that "[t]here is no allowance for the amending of the ad damnum clause to a Complaint after a trial on the merits by Rule of Court. Nor is such permitted through case law."

By Orders of April 29, 1994 the court disposed of all pending motions. Defendant's motions were denied, and Plaintiff's motion to amend was granted.[2] Within ten days of April 29 the Defendant, on May 9, moved for reconsideration of the denial of his motion for judgment nw. v., or for new

---

**2.** Following Plaintiff's filing of her motion for leave to amend and of her proposed amended complaint, Defendant also had moved to strike the proposed amended complaint. Although the docket entries of the orders of April 29 did not directly address the motion to strike, the grant of leave accepting the amended complaint as tendered necessarily denied the motion to strike.

trial, or for remittitur, and for reconsideration of the grant of leave to amend. The court denied the motion for reconsideration on May 24. Defendant noted his appeal to the Court of Special Appeals on June 22, 1994.

Prior to consideration of the matter by the Court of Special Appeals, this Court on its own motion issued the writ of certiorari.

An overview of the parties' contentions perhaps can best be achieved by a point and counterpoint presentation. Defendant, citing Maryland cases dating back to *Harris v. Jaffray*, 3 H. & J. 543 (1811), contends that where the verdict exceeds the ad damnum the defendant, on timely application to the trial court, is entitled as a matter of law to a remittitur down to the ad damnum. Plaintiff's answer is that the cases relied upon by Defendant were decided prior to the revision of the Maryland Rules of Procedure effective July 1, 1984, but that Md.Rule 2–341 removed any end limit on when amendments may be made while an action is in a circuit court, if leave of court is obtained. The immediate predecessor of Rule 2–341, former Md.Rule 320, dealt with the time for amendment in section c. It provided:

"1. Before Trial—Trial Before Court.

"In a case heard or tried before the court without a jury, any amendment may be made at any time before a final judgment or decree is entered.

"2. Trial Before Jury.

"In a case tried before a jury, an amendment may be made at any time before the jury retires to make up its verdict." [3]

Plaintiff submits that Md.Rule 2–341, by omitting any time limit, thus permits a post-verdict amendment, with leave of court. Accordingly, Plaintiff says that the Maryland cases

---

**3.** Under former Rule 320.d.1, no leave of court was required to file an amendment, but amendments were subject to the adversary's right of objection. If, in a jury trial, an amendment were made after the jury was sworn, the case proceeded unless the court considered a continuance necessary for a fair trial. See former Rule 320.e.2.

relied upon by Defendant are irrelevant because the present rule controls.

Defendant's reply is that mere silence in the present rule should not be construed to permit post-verdict amendments, even with leave of court. He argues that so substantial a change would be set forth expressly. As evidence that no authorization for post-verdict ad damnum amendments was intended, Defendant points to one of the appeals rules, Md. Rule 8–604(c)(2). It reads:

> *"Excessive Amount of Judgment.*—A judgment will not be reversed because it is for a larger amount than claimed in the complaint if the plaintiff files in the appellate court a release of the excess."

Present Rule 8–604(c)(2) is substantially former Rule 873.b, which antedated the 1984 revision of Title 2 of the Maryland Rules. As Defendant sees it, the recognition in former Rule 873.b, and the continued recognition in Rule 8–604(c)(2), of the need for a plaintiff to remit any excess of a verdict over the ad damnum demonstrates that the trial court in the instant matter was obliged to order a remittitur of the excess.

The rejoinder by Plaintiff is that Rule 8–604(c)(2) has no application to this case. Here, Plaintiff amended the ad damnum in the circuit court before the order for appeal was noted, so that the record on appeal presents a verdict, judgment, and ad damnum conforming with each other.

Plaintiff further contends that the order for appeal in this case operates only as to the denial of Defendant's motion for reconsideration. Plaintiff submits that final judgment was entered April 29 when the circuit court denied Defendant's motions filed under Rules 2–532 and 2–533. The time for noting an appeal following the entry of that judgment expired without Defendant's having filed any notice of appeal. Defendant's motion for reconsideration, Plaintiff submits, is a motion under Rule 2–535(a) and, pursuant to Rule 8–202(c), it does not stay the time for noting an appeal from the final, appealable judgment of April 29. Thus, the appeal is limited

to the denial of the motion for reconsideration, and review is limited to whether discretion was abused.

Defendant on the other hand submits that the foregoing, ordinary analysis does not apply in this case. He contends that the grant of leave to amend altered the legal effect of the verdict and increased the judgment from $100,000 to $205,-187.08. Citing *B & K Rentals & Sales Co., Inc. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 571 A.2d 1213 (1990), Defendant asserts that he filed his motion within ten days of the change in the judgment and that he had thirty days from the denial of that motion within which to appeal the change erroneously and adversely made in the judgment. Consequently, Defendant asserts that our review is for error in authorizing by amendment a post-verdict increase in the judgment and that the review is not limited to whether denial of the motion for reconsideration was an abuse of discretion.

I

Seemingly, the logical starting point is to determine the scope of review. That question turns on whether *B & K Rentals* applies to the instant matter. In *B & K Rentals*, a property damage negligence case, the jury returned a verdict for the plaintiff for $123,252, and judgment was entered accordingly. Md.Rule 2–601(a). The defendant timely moved for judgment nw. v. which was granted, and judgment was entered in favor of the defendant for costs. *B & K Rentals*, 319 Md. at 128–29, 571 A.2d at 1214. Within ten days thereafter, the plaintiff moved to reconsider the grant of judgment nw. v. *Id.* That motion was denied, and the plaintiff noted an appeal within thirty days from that denial. *Id.* at 129, 571 A.2d at 1214. This Court held that the motion, labeled as one for "reconsideration," operated as a motion to alter or amend a judgment under Rule 2–534, because the judgment was "based on a court decision." *Id.* at 131, 571 A.2d at 1215. When a timely motion is filed pursuant to Rule 2–534, Rule 8–202(c) provides that the notice of appeal shall be filed within thirty days after the denial or disposition of the motion. *Id.* at 132, 571 A.2d at 1215; Md.Rule 8–202(c).

Consequently, when the Rule 2–534 motion was denied that order became a " 'judgment' [and] ... was the only final appealable judgment in the case." *B & K Rentals*, 319 Md. at 132, 571 A.2d at 1216 (footnote omitted).

In the instant case judgment was entered February 24, 1994, based on the jury verdict, when the clerk entered a judgment in the amount of $205,187.08 on the docket. Md. Rule 2–601(b). Defendant's reliance on *B & K Rentals* in effect seeks to treat that judgment as severable. Defendant views the judgment on February 24 as legally effective only for $100,000 and views the order of April 29, 1994 as a new judgment for an additional $105,187.08. If the $105,187.08 portion of the judgment did not spring into being until April 29, 1994 by virtue of the amendment to the ad damnum, then the leave to amend operated like the grant of a judgment nw. v. for Plaintiff, strengthening the analogy to *B & K Rentals*.

■ Defendant's contention is contrary to the docket entries, while the analysis in *B & K Rentals* was consistent with docket entries. "Upon a general verdict of a jury ... the clerk shall forthwith enter the judgment...." Rule 2–601(a). "The clerk shall enter a judgment by making a record of it ... on a docket ... and shall record the actual date of the entry." Rule 2–601(b). Defendant's analysis requires rejecting part of what facially appears from the docketed judgment of April 29 by applying a perceived rule of law based on a comparison of the docketed judgment with the ad damnum of the complaint. But the Rules generally confine the determination of whether there is a final judgment to the face of the docket. *See Estep v. Georgetown Leather Design*, 320 Md. 277, 577 A.2d 78 (1990).

Thus, the question arises whether the ad damnum clause, as a matter of substantive law, so limits the extent of a jury's verdict that a judgment, entered by the clerk pursuant to a rule regulating only procedure, is ineffective as to any excess in the judgment over the ad damnum.

## II

Clearly, the amount claimed in the ad damnum clause in this case did not affect the fundamental jurisdiction of the Circuit Court for Montgomery County to render a judgment for $205,187.08 in a tort case.[4] Circuit courts in Maryland are courts of general jurisdiction. On the other hand, Defendant is quite correct in asserting that Maryland case law has uniformly treated the ad damnum as a limitation on recovery. The problem is discerning the nature of the limitation.

As recently as *Scher v. Altomare*, 278 Md. 440, 365 A.2d 41 (1976), this Court stated: "Of course, the recovery, if any, by the plaintiff cannot exceed in nature or amount either the damage proved or the sum claimed in the *ad damnum*, whichever is the lesser." *Id.* at 442, 365 A.2d at 42. *Scher* involved a claim for breach of contract. This Court held that dismissal of the action on limitations grounds was erroneous, and remanded for further proceedings. Thus, the quoted statement was dicta, but this Court obviously considered the proposition to be so clear as not to require any citation.

The opinion in *Finch v. Mishler*, 100 Md. 458, 59 A. 1009 (1905), reflects that in the Court of Appeals the plaintiff had released $32 of a judgment, the amount by which it exceeded the ad damnum. *Id.* at 462, 59 A. at 1010. That plaintiff was acting pursuant to a statutory predecessor of Rule 8–604(c)(2).

The plaintiff in *Attrill v. Patterson*, 58 Md. 226 (1882), remitted in the trial court the amount by which the verdict exceeded the ad damnum. On the defendant's appeal the judgment was reversed and a new trial ordered, because of misdirection of the jury. This Court thought "it proper to say

---

**4.** Civil procedure has come a long way since the time of the original writ. "The writ was the instrument by which jurisdiction to entertain the particular suit was conferred upon the court, the issue of the writ importing that the King had delegated to certain of his judges authority to adjudicate the specific controversy mentioned in the document." C.A. Keigwin, *Cases in Common Law Pleading* at 13 (2d ed. 1934). "Therefore the jurisdiction of the King's court was limited by the language of the writ and the judges were confined to consideration of the identical case stated in that document." *Id.* n. 2.

that the action of the [trial] court, in requiring the plaintiff to remit so much of the verdict as was in excess of the damages laid in the declaration, was in entire conformity with the law, practice and decisions of the State." *Id.* at 260–61. The Court cited to Md.Code (1860), Art. 29, § 39, a statutory predecessor of Rule 8–604(c)(2), to *Harris v. Jaffray,* 3 H. & J. 543 (1811), discussed in Part III, *infra,* and to "Poe's Pl. & Pr. 422." *Id.* at 261.[5]

In a case decided by the Court of Special Appeals the plaintiff had obtained a verdict for $15,000 in compensatory damages although the declaration sought only $10,000 in compensatory damages. *Carl M. Freeman Assocs., Inc. v. Murray,* 18 Md.App. 419, 306 A.2d 548, *cert. denied,* 269 Md. 756 (1973). The defendant, however, did not raise the issue in the trial court, or by brief or argument on appeal. The Court of Special Appeals concluded that it was precluded from considering the question. *Id.* at 420 n. 3, 306 A.2d at 550 n. 3. The court did say, however, that "[i]t has long been the law of this State that if a plaintiff recovers a verdict in excess of the damages laid in the declaration a remittitur by the trial court is proper." *Id.* *See also Baltimore City Lodge No. 3 of the Fraternal Order of Police, Inc. v. Mantegna,* 61 Md.App. 694, 697, 487 A.2d 1252, 1253, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985) (stating, in dicta, "that a plaintiff may not recover damages in an amount greater than that claimed").

The rule that damages assessed may not exceed damages claimed is quite old. In the earliest decision in this Court, *Harris v. Jaffray,* 3 H. & J. at 546, counsel for the defendant cited, *inter alia, Cheveley v. Morris,* 2 W.Blk.Rep. 1300, 96 Eng.Rep. 762 (Exchq.Ch.1779), and *Wray v. Lister,* 2 Stra. 1110, 93 Eng.Rep. 1064 (K.B.1739). Both cases apply the rule, but neither states its underlying reason. Both cases refer to decisions in Yelverton's Reports of cases decided in King's Bench during the reign of James I.

---

**5.** The first edition of J.P. Poe, *Pleading & Practice in Courts of Common Law* was published in 1882, in two volumes. The citation in either volume is not on point.

*Persival v. Spencer,* Yelv. 46, 80 Eng.Rep. 33 (K.B.1605), was an action on the case in which the plaintiff had claimed £10 in the Court of Northampton and had recovered judgment for £13.

> "[T]his judgment was reversed for this reason in the King's Bench for the plaintiff is in law taken to have the best knowledge of his own damage, and he shall never recover more than what he declares for; but if after such verdict the plaintiff had released all the damages, but those for which he declared, and then had judgment, that had been good."

*Id.*

*Vale v. Egles,* Yelv. 70, 80 Eng.Rep. 49 (K.B.1606), held that costs were not part of damages for purposes of the limitation on recovery. The report further states: "[O]therwise it is a true rule, that the plaintiff shall not recover more in damages than according to his declaration; for the plaintiff is by the law taken to be the best conusant of his own damage, and so are the books to be understood." *Id.* (citations omitted).

If the historic reason continues to be the reason for the rule, then it is one of the reasons assigned in the instant case by Defendant to support his motion for a new trial. That reason was considered and rejected by the circuit court before entering the judgment of April 29.

Theoretically a verdict in excess of the amount "laid in the declaration" and the amount claimed might be brought into conformity by raising the ad damnum as well as by reducing the verdict. But, from 1785 through at least June 30, 1984, when former Rule 320 was replaced by Rule 2–341, post-verdict amendments were not part of Maryland practice. Section IV of Chapter 80 of the Acts of 1785, which otherwise conferred full power and authority on the courts of law to allow amendments, limited the exercise of the power to permit amendments to those sought to be made before verdict.[6]

---

6.  Acts of 1785, ch. 80, § IV provided:
    "AND BE IT ENACTED, That the courts of law shall have full power and authority to order and allow amendments to be made in all

In any event the historical fact that a remittitur has been considered appropriate as to the excess of a verdict over the ad damnum does not demonstrate any substantive invalidity in a judgment that includes that excess. *Sullivan v. Jordan,* 310 Mass. 12, 36 N.E.2d 387 (1941), bears on the point. The issue was whether a garnishment action against the automobile liability insurer of the judgment debtor had been brought within the governing one year period of limitations. *Id.* at 14, 36 N.E.2d at 388. The insurer contended that the period began on the expiration of the time for appeal following a finding assessing damages against the insured in the underlying motor tort case. *Id.* The plaintiff contended that the limitations period began to run when the plaintiff filed a waiver of the excess of the damages over the ad damnum and the clerk entered a judgment in the amount of the ad damnum. *Id.* Concluding that the earlier date triggered limitations, the court gave the following analysis:

"There is no suggestion that the assessment of damages was due to accident or mistake or that a judgment following that finding was not the judgment that the court intended to render. Such a judgment was erroneous in that it did not conform to the amount claimed in the writ, but the defect resulted from an error committed by the court while acting within its jurisdiction, rather than from a finding that the court was without power to make. Accordingly, it has been held that a judgment in excess of the ad damnum is not void but voidable. The defect could have easily been corrected by an amendment to the writ, increasing the ad damnum. No such step was taken. A judgment which at the most is only voidable stands until it is modified, vacated or set aside

proceedings whatsoever before verdict, so as to bring the merits of the question between the parties fairly to trial; and if amendment is made after the jury is sworn, a juror shall be withdrawn; and in all cases where amendments are made, the adverse party shall have time allowed him, in the discretion of the court, to prepare to support his case upon the state of the proceeding so amended, and such costs shall be allowed the party against whom such amendment may be made as the court shall think just."

in direct proceedings brought in some one of the various methods provided by law to accomplish the purpose."

*Id.* at 16, 36 N.E.2d at 389 (citations omitted).

■ We hold that the ad damnum does not inherently limit the power of the jury to render a verdict and does not inherently limit the power of the court to enter a judgment.

### III

■ Nor does Rule 8–604(c)(2) prevent the circuit court's judgment of April 29, 1994 from being a judgment for $205,-187.08. The statutory predecessor to Rule 8–604(c)(2) is a response to *Harris v. Jaffray,* 3 H. & J. 543, an action in trover, begun in the General Court in 1796, and claiming £5,000 "current money." Upon abolition of the General Court the case was transferred to the Baltimore County Court where it was tried during the October 1807 Term resulting in a jury verdict for $14,560.40 "current money." *Id.* at 544–45. The defendant appealed to this Court. During the pendency of the appeal, at the December 1809 Term, the plaintiff moved in this Court that the defendant "show cause why the [plaintiff] should not be permitted to release so much of the damages, assessed by the jury . . . as exceeds the amount of damages laid in the declaration, and to amend the record by entering the judgment for the said amount of damages so laid in the declaration." *Id.* at 545. At the June 1811 Term the defendant opposed the rule, contending that there was error in the judgment and it must be reversed. The plaintiff countered by reliance on a statute, Chapter 153 of the Acts of 1809.

At the December 1811 Term the Court discharged the rule. The Court held that the Act of 1809 did not permit a plaintiff to do more in the Court of Appeals than could be done in the trial court. *Id.* at 547. In the trial court the plaintiff, after verdict and before judgment, could release the excess. *Id.* at 546–47. In the trial court, if an excess judgment were rendered on the verdict, the plaintiff could tender a remittitur during the same term of court, and the trial court could "enter

a judgment for the amount of the damages charged in the declaration." *Id.* at 547. "But if a judgment is entered upon the verdict, no release, or other act of the plaintiff, can give validity to that judgment, but on an appeal or writ of error, it must be reversed...." *Id.*[7]

Chapter 161 of the Acts of 1811, passed January 4, 1812, changed the procedure from the rule applied in *Harris v. Jaffray.* Section 3 of the enactment permitted the plaintiff to amend the record on appeal by entering a release of the excess, and § 4 of the enactment authorized the Court of Appeals to modify the judgment.[8]

---

7. Section 2 of Chapter 153 of the Acts of 1809 in part provided that the Court of Appeals could permit "any entry to be made, or act to be done, by either party" during the pendency of the appeal "which might or could have been done by such party after verdict [in the trial court] and which in law might have been necessary to give effect and validity to such judgment." The Court reasoned that the Act of 1809 did not apply because, if the record had come from the trial court with a release tendered by the plaintiff, the Court of Appeals did not have the authority to order the judgment altered. This was because "it is well settled, that on an appeal by a defendant, the judgment cannot be reversed, and such judgment entered for the plaintiff, as the Court below ought to have given, and the Act of Assembly [1809] makes no alteration in the law in that respect." *Harris v. Jaffray,* 3 H. & J. 543, 548.

8. Sections 3 and 4 of Chapter 161 of the Acts of 1811 read as follows:
   "3. AND BE IT ENACTED, That no judgment in any case shall be reversed in the court of appeals, because the verdict was rendered and the judgment entered in the court below for a greater sum than the amount of damages laid in the declaration; but the plaintiff below, or his legal representative in the court of appeals, shall be permitted, on motion in that court, in every such case to amend the transcript of the record of proceedings, by entering a release upon the record, of the damages exceeding those laid in the declaration, and the court of appeals shall proceed upon such amended transcript, in the same manner, and give the same judgment in the case as if the said release had been entered upon the record before judgment in the court below.
   "4. AND BE IT ENACTED, That in all cases where the court of appeals shall have permitted or directed any entry to be made, or act to be done on the trial of any appeal, or during its pendency, in virtue of any act of assembly of this state, which may require an alteration of the judgment given by the court from which such appeal was or shall be made, or which, if made in such inferior court, would have authorised or required a different judgment to have been given, the court of appeals may direct such judgment to be entered on deciding

■ Although *Harris v. Jaffray* speaks of "a release of parcel of a verdict" as "not having the effect in law to give validity to a vicious judgment for the whole," 3 H. & J. at 547, it is clear that under modern practice any error underlying a judgment for an amount that exceeds the ad damnum is not an error which the appellate court is obliged to note on its own initiative. That is effectively a holding of *Carl M. Freeman Assocs., Inc.,* 18 Md.App. 419, 306 A.2d 548.

The point is also discussed in 2 J.P. Poe, *Pleading & Practice in Courts of Common Law* § 191, at 141 & n. 34 (5th ed. (Tiffany) 1925). At least as early as the Rules Respecting Appeals adopted October 13, 1869 it was provided that "[i]n no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the court below...." Rule 4, 29 Md. xviii. Old Rule 4 (now Rule 8–131(a)) was also Md.Code (1924), Art. 5, § 10. In that same Code, Chapter 161, § 3 of the Acts of 1811 was Art. 5, § 21. Poe describes the procedure in Art. 5, § 21 as "the old practice under the Act of 1811...." Poe, § 191 n. 34. He further states that "under [Code (1924), Art. 5, § 10] such an amendment is not necessary now, if the point was not made in the court below, for the Court of Appeals by that section is precluded from deciding 'any point which does not plainly appear by the record to have been tried and decided by the court below.'" *Id. See also* H. Ginsberg & I. Ginsberg, *Pleading at Law in Maryland,* at 103 (1937).

In the matter *sub judice* we assume, *arguendo,* that Rule 2–341 does not provide for the grant of leave to amend after a verdict has been returned. We further assume, *arguendo,* that the circuit court erred in granting leave to amend in the case before us so that, whatever the nature might be of the defect in a verdict or judgment exceeding the ad damnum, the defect was not cured by amendment in this case. But, in light

such appeal, as the nature of the entry or amendment may require, or the court from which the appeal has been or shall be made would have rendered, if such entry or amendment had been made before the rendition of the judgment in such inferior court."

of all of the foregoing, it is clear that the assumed defect is procedural only and that it did not prevent the judgment of April 29, 1994 from being a final, appealable judgment in the full amount of the verdict.

## IV

█ Defendant did not timely appeal the judgment of April 29. That judgment, particularly by denying Defendant's request for remittitur and by granting leave to amend, rejected Defendant's legal contention that the judgment on the verdict could not stand in an amount exceeding the ad damnum. Instead of noting an appeal from the final judgment and seeking direct appellate review of what we assume was an error of law by the trial court, Defendant resubmitted the same arguments to the trial court in support of the motion for reconsideration. Thus the appeal here is from the denial of the motion for reconsideration, and review is limited to whether the trial court abused its discretion in denying the motion. *See Grimberg v. Marth*, 338 Md. 546, 659 A.2d 1287 (1995); *Anthony v. Clark*, 335 Md. 579, 644 A.2d 1070 (1994); *Burtoff v. Burtoff*, 321 Md. 631, 584 A.2d 63 (1991); *Lancaster v. Gardiner*, 225 Md. 260, 170 A.2d 181, *cert. denied*, 368 U.S. 836, 82 S.Ct. 63, 7 L.Ed.2d 37 (1961).

█ Defendant has not included in the record extract any of the testimony bearing on the amount of damages. There is no evidence that Defendant was prejudiced in fact, *e.g.*, in relation to the limits on motor vehicle liability coverage, as a result of the circuit court's determination not to reduce the verdict to the ad damnum in the original complaint. Defendant's argument in this Court rests entirely on the proposition that a remittitur was required as a matter of law. In that connection the words of Judge J. Dudley Digges, speaking for this Court in *Hardy v. Metts*, 282 Md. 1, 381 A.2d 683 (1978), are completely applicable here.

"[T]he exercise of this discretion will not be disturbed unless clearly shown to have been abused. *Lancaster v. Gardiner, supra* at 268–69[, 170 A.2d at] [185]. This is

particularly true where, as here, the dispute between the infant appellant and the decedent's widow was decided by the trial court on the merits rather than being terminated through the entry of a judgment by default for want of an appearance by the defendant. Although this Court has not before had occasion to state the principle in this context, we now hold that when the trial court denies a Rule 625(a) preenrollment request to revise a final judgment rendered on the merits, if that judgment was based solely on a question of law an appellate court will not ordinarily disturb the trial court's discretionary decision not to reopen the matter; an appeal from the primary judgment itself is the proper method for testing in an appellate court the correctness of such a legal ruling. To reach any other conclusion would have the effect of permitting, if not two appeals, a delayed appeal of the original legal issue decided by the trial court, a result both undesirable and unintended by the rule. Appellant took no appeal from the primary judgment which was entered and 'it cannot [now] obtain a review of it under the guise of seeking a review of the exercise of judicial discretion in refusing to set it aside.' *S. & G. Realty v. Woodmoor Realty*, 255 Md. 684, 692–93, 259 A.2d 281, 285 (1969)."

*Id.* at 6, 381 A.2d at 686–87.

For the foregoing reasons, we affirm.

*JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*