1815.

Harris
vs
Jaffray

---

## HARRIS vs. JAFFRAY, use of GWYNN.

MAY.

APPEAL from *Baltimore* County Court. This was an action of *Trover*, brought in the late General Court to Oc-

The plaintiff may require the person, for whose use the action was instituted, to pro-

duce the assignment, if any he hath, under which he claims the use.

If a verdict is given for a larger sum than the damages laid in the declaration, the plaintiff may before judgment release the excess, and take a judgment for the amount of the damages laid; or if after judgment, but during the same term, he tenders a *remittitur* of a parcel of the verdict, the court may strike out the judgment, and enter a judgment for the amount of the damages charged in the declaration.

If a judgment is entered upon a verdict for more damages than laid in the declaration, no release, or other act of the plaintiff, can give validity to that judgment, but on an appeal, or writ of error, it must be reversed; and the law in that respect is not altered by the act of 1809, ch. 153.

But under the acts of 1806, ch. 153, and 1811, ch. 161, where, by an inquisition on an inquiry at bar, the jury assessed a larger amount of damages than was laid in the declaration, and judgment was rendered for the sum found by the inquisition, on an appeal by the defendant the court of appeals permitted the plaintiff to release the excess, and enter the release on the record, and they amended the record by entering a judgment for the damages laid in the declaration.

Where the record stated that the jury, on an inquiry at bar under the act of 1794, ch. 46, were charged to inquire of the damages sustained by the plaintiff, omitting *and costs*, and the inquiry was not stated to be on motion of the plaintiff. *Quere*. Whether these were fatal errors?

In an action of trover, the defendant, at a subsequent term, after issue had been joined on his plea of not guilty, filed another plea, viz. "And the said D, by Z H his attorney, comes and defends the force and injury when, &c. and says that the said P his action aforesaid further against him to have and maintain ought not, "because he says," &c. then setting forth that P had, at the *preceding* term of the said court, obtained a judgment in an action of trover against W T, for conversion of the same goods, &c. and concluding the plea—"And this the said D is ready to verify, wherefore he prays judgment if the said P his action aforesaid against him to have and maintain ought," &c. To this plea there was a general demurrer. *Quere*. Whether it was a second plea in bar, or a plea *puis darrein continuance?*

1815.

Harris
vs
Jaffray

tober term 1796, for the conversion of three boxes, containing 1326 pieces of gold coin, commonly called half johannes, of the value of £4000 current money. The damages laid in the declaration were £5000 like money. The defendant, (now appellant,) at May term 1797, pleaded not guilty, upon which issue was joined. At May term 1798, the defendant filed the following plea, stated to be a plea *puis darrein continuance.* viz. "And the said *D. Harris,* by *Z. Hollingworth* his attorney, comes and defends the force and injury when, &c. and says that the said *J. Jaffray,* his action aforesaid further against him to have and maintain ought not, because he says, that the said *Jaffray,* by *J. Winchester* his attorney, heretofore, to wit, on," &c. setting forth another action brought by the present plaintiff against *William Thompson,* for trover and conversion of the same boxes of half johannes, as described in the declaration in this cause, and that a judgment by confession was rendered against *Thompson* at October term 1797, and that the said judgment was in full vigour and effect, and no wise reversed or annulled; averring that the plaintiff in that action, and the plaintiff in this, was the same person, and that the goods, chattels and money, and the finding and conversion thereof, mentioned in the record and proceedings against *Thompson,* and the goods, &c. mentioned in the declaration in this action, are also the same. "And this the said *D. Harris* is ready to verify; wherefore he prays judgment if the said *Jaffray,* his action aforesaid against him to have and maintain ought, &c." To this plea there was a general demurrer, and joinder in demurrer. At March term 1807, (the proceedings having been transferred to *Baltimore* county court on the abolition of the general court,) the demurrer was adjudged good. The defendant then moved the court to amend the pleadings, by putting in a plea of the general issue, which he tendered to the court; but the court refused to sustain the motion, and on motion of the plaintiff ordered a venire for a jury to appear at the next term, to inquire what *damages and costs* the plaintiff had sustained, &c. At the next term, (October 1807,) "a jury was ballotted, empannelled and accepted, elected, sworn, and charged to inquire of the damages and costs sustained by the plaintiff in the premises." The jury returned their inquisition, under their hands and seals, as follows: "This

inquisition made, indented and taken, at bar, in *Baltimore* county court, in an action of trover, depending in the said court between *James Jaffray*, plaintiff, and *David Harris*, defendant, witnesseth, that we the jurors, whose names are hereto subscribed, and seals affixed, being duly empannelled, sworn, and charged to inquire of the damages and costs sustained by the said *James Jaffray* in the said action, by reason of the conversion of certain goods and chattels of the said *James Jaffray*, by the said *David Harris*, to his use, having heard the evidence given in the said action, and duly considered the same, do find the damages sustained by the said *James Jaffray* in the said action, to the sum of fourteen thousand five hundred and sixty dollars and forty cents current money, and the sum of forty dollars, costs of the said suit. In witness whereof we have hereto set our names and seals this," &c. Judgment was rendered upon this inquisition for $14,560 40 current money, damages, and $40 costs. From that judgment the defendant appealed to this court.

At December term 1809 of this court, on motion of the appellant, it was ruled by the court, that *William Gwynn*, (for whose use this suit was entered,) on or before the second day of the next term of this court show cause, if any he hath, why he shall not produce to this court the assignment, if any he hath, under which he claims this suit for his use. The assignment above required was produced. At the same term, on motion of the appellee, it was ruled by the court, that the appellant, or his counsel, show cause why the appellee should not be permitted to release so much of the damages, assessed by the jury in this case, as exceeds the amount of damages laid in the declaration, and to amend the record by entering the judgment for the said amount of damages so laid in the declaration. This rule to show cause was argued at June term 1811, before POLK, BUCHANAN, and EARLE, J.

*Key* and *Shaaff*, against the rule, contended, 1. That it was error if a judgment was entered for more damages than laid in the declaration. 2. That when a defendant brings a writ of error or appeal, and the case is brought before a superior court, there can be no judgment, but simply a reversal if it is erroneous; but if a plaintiff brings a writ of error or appeal, then the court, if they reverse

the judgment, may give such judgment as the inferior court ought to have given if there is no bill of exceptions in the case.

On the *first* point, they referred to *Hoblins vs. Kembling*, 1 *Bulstr.* 49. *Way vs. Lister*, 2 *Stra.* 1110. *Pilford's* case, 10 *Coke*, 115; and *Chevely vs. Morris*, 2 *W. Blk. Rep.* 1300.

On the *second* point, they cited 2 *Bac. Ab.* tit. *Error*, 503. *Parker vs. Harris*, 1 *Salk.* 262. *Samuel vs. Judin*, 6 *East*, 263; and *Herle vs. Pender*, 3 *Bro. P. C.* 505.

They also contended that the act of 1809, *ch.* 153, *s.* 2, did not embrace the case, and that the court could not permit the amendment to be made under that act.

*Harper*, in support of the rule, relied upon the act of 1809, *ch.* 153, *s.* 2, which is in the following words, viz. "That where any verdict shall be given in any action, suit or demand, in any court of record of this state, the judgment thereupon shall not be stayed or reversed for any defect of form or substance in any writ, original or judicial, or for any variance in such writs from the declaration or other proceedings, nor for defects in any count in the declaration, so that there be one good count; and if the court of appeals should be of opinion, that there appears to be sufficient matter of substance in the record and proceedings on any appeal or writ of error, to enable them to proceed thereon, the same shall not be reversed or dismissed for want of form; and the court may, on motion, permit and direct any entry to be made, or act to be done, by either party, on the trial of any appeal, or during its pendency, which might or could have been done by such party after verdict, in the court from whose judgment such appeal was made, and which in law might have been necessary to give effect and validity to such judgment.

*Curia ad. vult.*

At December term 1811, the opinion of the court was delivered by

BUCHANAN, J. If a verdict is given for a larger sum than the damages laid in the declaration, the plaintiff may, before judgment, release the excess, and take a judgment for the amount of the damages laid; or if after judgment rendered upon the verdict, but during the same term, he

tenders a *remittitur* of a parcel of the verdict, the court may strike out the judgment on the verdict, and enter a judgment for the amount of the damages charged in the declaration. But if a judgment is entered upon the verdict, no release, or other act of the plaintiff, can give validity to that judgment, but on an appeal or writ of error, it must be reversed, unless the act of 1809, *ch*. 153, on which the rule in this case is founded, affords a remedy.

And the only question for the court is, Whether the law in that respect is altered by the act of assembly? The words of the act are, that the court of appeals "may, on motion, permit and direct any entry to be made, or act to be done, by either party, on the trial of any appeal, or during its pendency, which might or could have been done by such party after verdict, in the court from whose judgment such appeal was made, and which in law might have been necessary to give effect and validity to such judgment."

This clause of the law in no manner affects the proceedings in the county courts, and authorises no acts to be *there* done, or entries made, which could not have been done before; nor does it give any efficacy to any acts or entries *there* done or made by either party, to a suit, which the same acts or entries would not have had in law before, but only authorises such entries to be made, or acts to be done, in the *court of appeals*, by either party to a suit, (and not by the court,) which might have been made or done by the same party in the *court below*, after verdict, without giving any efficacy to such acts or entries when made in the *court of appeals*, which the same acts or entries would not have had if made in the county court.

Independent of this act of assembly, if *after* a *remittitur* is entered, *a judgment is rendered by the court*, on a verdict for *more* than the damages in the declaration, or if the *remittitur* is entered *after* judgment, and *that judgment is* suffered to *remain*, in either case the judgment is erroneous, and not cured by the *remittitur; a release of parcel of a verdict, not having the effect in law to give validity to a vicious judgment for the whole*; and no entries or acts being authorised to be made in the county courts by either party to a suit, which might not before have been made after verdict; and no efficacy being given by the act of assembly to such acts or entries, when made in the court of appeals, which they would not have had, if made in the court be-

low, it does appear to the court, that a release entered in this court of parcel of a verdict, cannot give validity to a judgment rendered by a court below, for the whole of that verdict, being for a greater amount than the damages laid in the declaration; for that would be giving greater efficacy to a release entered in this court, than the same act would have if entered in the court below, a release entered below of a parcel of a verdict, not having the effect in law to give validity to a vicious judgment for the whole.    Suppose, *then*, the record before this court contained a release, entered below by the plaintiff, of a parcel of the *inquisition*, there would then be no act to be done by the party, in virtue of the act of assembly, and the judgment being for more than the damages charged in the declaration, it would be erroneous; and could this court be called upon to affirm that judgment thus clothed in error? They surely could not; nor could this court amend or alter it in conformity with the release, but would be constrained to reverse it; which shows, that the sum for which a judgment is given, is a substantial part of it, and cannot be altered without altering the judgment.    And the court think there is nothing in the act of assembly giving authority to this court to make any alteration or disposition of a judgment on release entered here, which they could not make of the same judgment on a *remittitur* entered in a court below.    The court are therefore of opinion, that even if a release is permitted to be entered in this case of a part of the inquisition, they cannot alter the amount of the judgment, which would in fact be to enter a judgment of their own, and then to affirm that judgment; so that there would be in the record no judgment of the court below; nor can this court reverse it, and give a judgment for the damages charged in the declaration, for it is well settled, that on an appeal by a defendant, the judgment cannot be reversed, and such a judgment entered for the plaintiff, as the court below ought to have given, and the act of assembly makes no alteration in the law in that respect.    The defendant applies to be *relieved* from an erroneous judgment, and not to have a more perfect one entered against him; and he is driven to his appeal, by the act of the plaintiff in taking a judgment against him for more than by law he is entitled to.    If in this case the *judgment* was for *the amount* of the *damages in the declaration*, the *inquisition*

being for more, and *no release* entered on the record, the plaintiff might enter one now. But however this court feel disposed to give effect and operation to the acts of the legislature, they think they cannot, by construction, strain the act in question to a meaning which the language of it will not bear, and thereby take to themselves an authority which the law, (whatever may have been the intention of the makers,) does not give.

The court therefore think that the rule ought to be discharged.

POLK, J. Dissented.

#### RULE DISCHARGED.

At the same term it was ruled by the court, on motion of the appellee, that the appellant show cause why the appellee should not be permitted to release so much of the damages found by the jury in this case, as exceeds the amount of damages laid in the declaration therein, and to enter such release on the records of this court. And also show cause why this court, after the release and entry aforesaid, should not amend the transcript of the record in this case by entering such judgment, on deciding the appeal, as the nature of the entry or amendment may require, or as the court from which the appeal has been made would have rendered if such entry or amendment had been made before the rendition of the judgment in the said inferior court.

At December term 1813, this rule was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, EARLE, and JOHNSON, J.

*Pinkney, Key* and *Shaaff*, against the rule. The motion and rule, they said, had been submitted by the appellant under the act of 1811, ch. 161, passed since this court discharged the former rule, as not being embraced by the act of 1809, ch. 153, s. 2. And which act of 1811, ch. 161, seemed to have been made expressly to take in this case. By the *third section* it is enacted, "that no judgment in any case shall be reversed in the court of appeals because the verdict was rendered and the judgment entered in the court below for a greater sum than the amount of damages laid in the declaration; but the plaintiff below, or his legal representative in the court of appeals, shall be permitted, on motion in that court, in

every such case, to amend the transcript of the record of proceedings, by entering a release upon the record of the damages exceeding those laid in the declaration, and the court of appeals shall proceed, upon such amended transcript, in the same manner, and give the same judgment in the case, as if the said release had been entered upon the record before judgment in the court below." And by the *fourth section* it is enacted, "that in all cases where the court of appeals shall have permitted or directed any entry to be made, or act to be done, on the trial of any appeal, or during its pendency, in virtue of any act of assembly of this state, which may require an alteration of the judgment given by the court from which such appeal was or shall be made, or which, if made in such inferior court, would have authorized or required a different judgment to have been given, the court of appeals may direct such judgment to be entered, on deciding such appeal, as the nature of the entry or amendment may require, or the court, from which the appeal has been or shall be made, would have rendered if such entry or amendment had been made before the rendition of the judgment in such inferior court."

They contended, that this act did not embrace the judgment before the court, it having been rendered on the *inquisition* of a jury, and not on a *verdict;* and to show the distinction between an inquisition and a verdict, they referred to the statutes, 32 *Hen.* VIII. ch. 30, and 18 *Eliz.* ch. 14, cited in 1 *Bac. Ab.* 91, 92. *Ireland's* case, *Cro. Eliz.* 339. *Courtier vs. Barret, Ibid* 412. *Cannon vs. Abbot,* 1 *Lev.* 210. 5 *Com. Dig.* tit. *Pleader,* 157. The act of 1794, ch. 46; and 10 *Coke,* 126.

*Harper* and *W. Dorsey,* in support of the rule, referred to the acts of 1794. ch. 46, and 1785, ch. 80, s. 18. 3 *Blk. Com.* 397, 393. *Jacob's L. D.* tit. *Inquest,* 454. *Ibib* tit. *Judgment,* 552. *Ibid* tit. *Ventre,* &c. *System of Plead.* 514; and *Co. Litt.* 162, a. They also contended, that in the *third section* of the act of 1811, ch. 161, the expressions "that no judgment shall be reversed because the verdict was rendered *and* the judgment entered, &c. might be construed, *or* the judgment, &c.

CHASE, Ch. J. delivered the opinion of the court, making the rule absolute. He said the court considered that

the acts of 1809, *ch.* 153, and 1811, *ch.* 161, authorised the court to permit the entry to be made.

BUCHANAN, J. dissented.

#### RULE MADE ABSOLUTE.

The appellee then entered his release of the sum of $2227 06¾, parcel of the sum found and returned for his damages by the inquisition, being so much of the damages as exceeded the sum of £5000 current money, the damages laid in the declaration; and prayed that the release be entered on the records of this court; that the transcript of the record be amended according to such release and entry; and that judgment be entered for the sum of $13,333 33¼, being the residue of the damages so found and returned with costs, &c.

*Key* and *Shaaff*, for the Appellant, then contended, that by the record it appeared that the jury were improperly charged to inquire of the damages sustained by the plaintiff, omitting *and costs*, as required by the act of 1794, *ch.* 46, and the inquiry was not stated to be on motion of the plaintiff. 2 *Harr. Ent.* 121, (*a*).

*Harper* and *W. Dorsey*, for the Appellee stated, that as there seemed to be some informality in the record, they suggested diminution; and a writ of diminution being granted, the record was returned, as herein before stated.

At this term, (May term 1815,) the cause was argued before CHASE, Ch. J. and BUCHANAN, and MARTIN, J.

*Pinkney, Key* and *Shaaff*, for the Appellant, contended, that the court below erred in giving judgment against the defendant while there was an outstanding plea, and issue undisposed of. That the last plea was not a plea, *puis darrein continuance*, but was a second plea in bar. That the fact pleaded in the second plea did not happen after the last continuance, nor does that plea conclude as a plea *puis darrein continuance*; and not being such a plea, but simply a further plea under the statute of *Ann*, the first plea was not waived. To show that it was not in the form of a plea *puis darrein continuance*, they referred to 2 *Harr. Ent.* 550, where the former plea is relinquished, and the

(*a*) See *Kierstead vs. Rogers & Garland*, 6 *Harr. & Johns.* 282.

fact had happened after the last continuance, and the conclusion of the plea is different from the present. They contended, 1. That every plea of *puis darrein continuance* must be verified by affidavit. *Martin vs. Wyvill,* 1 *Stra.* 493. 2. That this plea was not pleaded as a plea *puis darrein continuance,* because in conclusion it strikes at the action itself, and not at its further continuance. 3. That in a plea of *puis darrein continuance,* the fact pleaded must have happened since the last continuance. They referred to 5 *Bac. Ab.* tit. *Pleas & Pleadings,* (Q) 477. 2 *Lill. Pr. Reg.* 326. That here the fact happened at October term 1797, and was pleaded at May term 1798. That this was a plea under the statute of *Ann,* and could be added at any time without leave of the court. They cited 5 *Com. Dig.* tit. *Pleader,* 68, 223. *Ryley vs. Parhurst,* 1 *Wils.* 219. *Waters vs. Bovell, Ibid* 223.

*Harper,* for the Appellee, contended, that the statute of *Ann* does not give the defendant leave to plead a second or other plea, after he has selected his defence. That after issue was joined he could plead only *puis darrein continuance.* He cited 5 *Bac. Ab.* tit. *Pleas,* &c. 121. He also contended, that although the plea was not in all its form in the nature of a plea *puis darrein continuance,* yet it was in substance such a plea. It was once so considered by the defendant's counsel, and when the demurrer was ruled good, they applied for leave to plead the general issue. This they would not have applied for if they had considered there was an outstanding plea subsisting in the case. That it is a plea *puis darrein continuance,* he referred to *Bull. N. P.* 309. *Barber vs. Palmer,* 1 *Salk.* 178. *Anonymous, Cro. Eliz.* 49. 3 *Blk. Com.* 316. 1 *Chitty's Plead.* 436, and 2 *Chitty's Plead.* 676, 677.

By consent of the parties, who entered into terms,

JUDGMENT REVERSED.