969 A.2d 1034

**Leila BIJOU, et al.**

v.

**Adrienne YOUNG–BATTLE.**

**No. 182, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

April 30, 2009.

Richard R. Schimel (Budow & Schimel, on the brief), Bethesda, for Appellant.

Barnaby W. Zall, Rockville (Roger E. Middleton, Bowie, and T.N. Nokware Adesegun, Snellville, GA, on the brief), for Appellee.

Panel: JOSEPH F. MURPHY, JR., Judge of the Court of Appeals (specially assigned), BARBERA,* and JAMES A. KENNEY, III, (retired, specially assigned), JJ.

JAMES A. KENNEY, III, Judge (retired, specially assigned).

Described by appellants as a "procedural hot potato," this appeal directs our focus to the 1998 Committee note to Maryland Rule 2–341(b) and a post-verdict motion filed in this Court for leave to amend the *ad damnum* clause to reflect the damages awarded by a jury. Appellee, Adrienne Young–Battle ("Young–Battle"), sued appellants, Leila Bijou and Michael Bijou ("the Bijous"), in the Circuit Court for Prince George's County, to recover damages for injuries she sus-

---

* Mary Ellen Barbera, now serving on the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; she participated in the adoption of this opinion as a specially assigned member of this Court.

tained during a confrontation with the Bijous' labrador retriever. A jury awarded Young–Battle damages that exceeded the amount requested in the Complaint. After entry of the judgment in the amount of the jury award, and the denial of their post-trial motions, the Bijous appealed to this Court. With that appeal pending, Young–Battle filed a motion, in this Court, requesting leave to amend the *ad damnum* clause of her Complaint to reflect the jury award. This Court, in an unreported opinion, remanded the case to the circuit court to explain the basis for its denial of the post trial motions and to consider whether Young–Battle's motion to amend was timely. The circuit court found the motion timely, and this appeal followed. Appellants present the following question for our review:

> Is a trial court obliged to reduce a verdict which exceeds the amount claimed in the *ad damnum* clause of the Complaint, when the Plaintiff fails to amend that clause pursuant to Maryland Rule 2–341(b) prior to the entry of judgment?

For the following reasons, we shall affirm the judgment against appellants for $250,000.00, subject to a release of the excess above $250,000.00 being filed in this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 3, 2002, the Bijous' dog bit Young–Battle's hand while she was attempting to drive the dog from her property. When the dog had come onto Young–Battle's property on several prior occasions, she had successfully driven the dog away without incident. Young–Battle filed a complaint against the Bijous on March 4, 2003, seeking compensatory damages in the amount of $250,000.00, plus interest and costs.

### The First Appeal

The circuit court granted summary judgment in favor of the Bijous on January 28, 2004. Young–Battle filed a motion to alter or amend the judgment, requesting "the [c]ourt to provide a basis for [its] decision, including any findings of fact and conclusions of law." The court denied Young–Battle's motion,

and Young–Battle appealed to this Court. In an unreported opinion, a panel reversed the grant of summary judgment and remanded the case to the circuit court for further proceedings.[1]

### The Second Appeal

On remand, a jury returned a verdict in favor of Young–Battle in the amount of $504,480.00. The Verdict Sheet reads as follows:

### *VERDICT SHEET*

1. Do you find by a preponderance of the evidence that [the Bijous] were negligent on May 3, 2002 and that their negligence was the proximate cause of the injury to [Young–Battle]? YES

2. Do you find by a preponderance of the evidence that [Young–Battle] was negligent on May 3, 2002 and that her negligence was the proximate cause of the injury to [Young–Battle]? NO

3. Do you find by a preponderance of the evidence that [Young–Battle] assumed the risk of injury on May 3, 2002? NO

4. What damages, if any, do you award to [ ] Young–Battle for:

| | |
|---|---|
| a) medical expenses | $ 27,100 |
| b) Loss of earnings, and earnings incurred in the past | $ 27,380 |
| c) Loss of earnings or earning capacity reasonably probable to be expected in the future | $311,000 |
| d) Non-economic damages sustained in the past and reasonably probably to be sustained in the future. All damages which you may find for pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other non-pecuniary injuries are noneconomic damages. | $139,000 |

---

1. *Young–Battle v. Bijou,* No. 14, September Term 2004, slip op. at 13, 162 Md.App. 762 (filed April 14, 2005)(*"Bijou I "*).

Total                                                            $450,000 [2]

The Bijous filed a motion for a new trial or in the alterna-
tive a remittitur, in which they asserted that the judgment
should be remitted to $250,000.00, the amount Young–Battle
requested in the *ad damnum* clause of her Complaint.[3] The
circuit court denied the motions, and the Bijous appealed on
December 20, 2005. Five months later, on May 22, 2006,
Young–Battle filed a motion in this Court for leave to amend
her Complaint to conform the *ad damnum* clause to the
damages awarded by the jury.

In an unreported opinion, the panel remanded the case to
the circuit court for "(1) articulation of its ruling on [the
Bijous'] motion for a new trial or remittitur; (2) consideration
of whether [Young–Battle's] motion to amend [was] timely;
and (3) modification of the verdict to reflect damages for past
medical expenses of $4,168.56." [4] The panel explained that
"the [circuit] court did not articulate a reason for its denial of
[the Bijous'] motions," and, therefore, it was "not possible for
[it] to discern an appropriate exercise of discretion." *Bijou II*,
slip op. at 10. The Court of Appeals denied the Bijous'
petition for certiorari.[5]

## This Appeal

On remand, the circuit court, following a hearing, issued a
written opinion explaining that it had denied the motion for a
new trial or remittitur because it "did not find the amount of

---

2. Although the verdict sheet indicated a total damage award of
   $450,000.00, the itemized damages totaled $504,480.00, and judgment
   was entered in that amount. The panel in the second appeal reduced
   that amount by $7,931.44.

3. The Bijous also filed a motion for judgment notwithstanding the
   verdict, in which they argued that "[t]he jury ... clearly did not follow
   the jury instructions of negligence of the dog owner and the assumption
   of risk." The denial of that motion is not at issue in this appeal.

4. *Bijou v. Young–Battle*, No. 2223, September Term 2005, slip op. at 14,
   171 Md.App. 738 (filed October 23, 2006)("*Bijou II* ").

5. *Bijou v. Young–Battle*, 396 Md. 525, 914 A.2d 768 (2007) ("*Bijou
   III* ").

the jury verdict excessive or grossly excessive and the verdict did not shock [its] conscience." The court reasoned that "[Young–Battle's] job as a graphics artist involved fine motor movements of the hand which was mangled by this incident," and "the compensation determined by the jury to be appropriate in this circumstance did not appear to the [c]ourt to be excessive in light of the evidence of permanent impairment in this case."

The circuit court also found that Young–Battle's motion to amend her Complaint was timely because "[Maryland] Rule 2–341(b), as amended in 1998, permits the filing of a motion to amend a complaint to increase an *ad damnum* clause to conform to a jury verdict," and that "[t]here [i]s no requirement that the motion to amend be filed prior to the [c]ourt's consideration of the Motion for a New Trial or Remittitur." According to the court:

> Amendment of pleadings under Rule 2–341(b) may be made only with leave of court. It is the trial court's discretion, in the first instance, which determines whether such leave may be granted. The standard for review of such a request is whether the failure to amend or the amendment itself would prejudice the defendant, which, in the [c]ourt's view, means that the defendant would have been hindered in presenting a defense. After close observation of the trial, and after consideration of the material presented to the [c]ourt following the trial, the [c]ourt believes that [the Bijous] were not prejudiced by the lack of an amended *ad damnum* clause[ ] because the defense presented would have been the same no matter what the *ad damnum* had claimed.

## DISCUSSION

The Bijous assert that the circuit court was required to grant their motion for remittitur because Young–Battle failed to make a motion to amend the *ad damnum* to conform to the jury verdict before the circuit court entered final judgment. They argue, citing *Harris v. Jaffray*, 3 Har. & J. 543 (1815),

that "[i]t has long been the law of this State that if a plaintiff recovers a verdict in excess of the damages set forth in a Complaint, a remittitur by the trial court is proper." They also argue that Rule 2–341(b) does not apply to the appellate courts, and this Court does not have the authority to entertain a motion to amend the *ad damnum.*

Young–Battle argues that neither Rule 2–341(b) nor the Committee note imposes a specific deadline for filing a motion to amend the *ad damnum,* and, when the judgment was challenged on appeal, she could make a motion to amend the *ad damnum* at the appellate level. She also argues that the circuit court, on remand, could grant the motion. Because the *ad damnum* does not inherently limit the power of the court to enter a judgment that exceeds it, Young–Battle contends that failure to amend the *ad damnum* clause does not require the trial court to grant a remittitur and reduce a verdict that exceeds the *ad damnum.*

The Court of Appeals considered a post-verdict motion to amend an *ad damnum* clause in *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995). In *Falcinelli,* plaintiff sued defendant for injuries suffered in an automobile accident, claiming damages of $100,000.00. *Id.* at 416, 663 A.2d 1256. The jury returned a verdict of $205,187.08 for reimbursement of medical expenses, lost wages, and noneconomic damages. No objection was made to the verdict prior to discharge of the jury. The clerk noted the verdict on the docket and entered judgment on the day that the verdict was returned. *Id.* at 47, 663 A.2d 1256.

Within ten days of the entry of the verdict, defendant moved for a judgment notwithstanding the verdict, for a new trial, or, in the alternative, for a remittitur. *Id.* In support of a remittitur, defendant argued that the verdict was excessive, stating that "[i]t may be that the Plaintiff would agree inasmuch as the figure of $100,000 was penned in her Complaint." *Id.*

In response to defendant's motions, plaintiff filed a motion for leave to amend the Complaint, together with a proposed

Amended Complaint with an *ad damnum* of $205,187.08. *Id.* Defendant responded that "[t]here is no allowance for the amending of the *ad damnum* clause to a Complaint after a trial on the merits by Rule of Court. Nor is such permitted through case law." *Id.* at 418, 663 A.2d 1256.

The circuit court denied the defendant's motions and granted plaintiff's motion for leave to amend. Within ten days of this action, defendant moved for reconsideration. The circuit court denied the motion for reconsideration on May 24 and defendant noted his appeal to this Court on June 22. *Id.* at 419, 663 A.2d 1256.

The Court of Appeals granted certiorari before review by this Court. Defendant contended that, when the verdict exceeds the *ad damnum*, the defendant, on a timely application to the trial court, is entitled, as a matter of law, to a remittitur of damages that exceed the *ad damnum.* Plaintiff contended that Maryland Rule 2–341 allowed a post-verdict amendment to the pleadings at the trial court level because the rule specifies no time limit for making amendments. *Id.*

Notably, plaintiff also argued that the only issue before the Court was the denial of defendant's motion for reconsideration, as the time for noting an appeal from the original denial of his motion for a new trial or remittitur had passed. *Id.* at 420, 663 A.2d 1256. Defendant responded that the date of final judgment was the date the circuit court granted plaintiff's motion to amend the *ad damnum* clause, as it was the amendment that authorized the additional $105,187.08. *Id.* at 421, 663 A.2d 1256. To resolve this issue, the Court considered "whether the ad damnum clause, as a matter of substantive law, so limits the extent of a jury's verdict that a judgment, entered by the clerk pursuant to a rule regulating only procedure, is ineffective as to any excess in the judgment over the ad damnum." *Id.* at 422, 663 A.2d 1256.

In discussing the limitation on the jury's verdict imposed by the *ad damnum* clause, the Court reviewed relevant case law:

The rule that damages assessed may not exceed damages claimed is quite old. In the earliest decision in this Court,

*Harris v. Jaffray,* 3 H. & J. at 546, counsel for the defendant cited, inter alia, *Cheveley v. Morris,* 2 W.Blk.Rep. 1300, 96 Eng.Rep. 762 (Exchq.Ch.1779), and *Wray v. Lister,* 2 Stra. 1110, 93 Eng.Rep. 1064 (K.B.1739). Both cases apply the rule, but neither states its underlying reason. Both cases refer to decisions in Yelverton's Reports of cases decided in King's Bench during the reign of James I.
. . . .

Theoretically a verdict in excess of the amount "laid in the declaration" and the amount claimed might be brought into conformity by raising the ad damnum as well as by reducing the verdict. But, from 1785 through at least June 30, 1984, when former Rule 320 was replaced by Rule 2–341, post-verdict amendments were not part of Maryland practice. Section IV of Chapter 80 of the Acts of 1785, which otherwise conferred full power and authority on the courts of law to allow amendments, limited the exercise of the power to permit amendments to those sought to be made before verdict.

*Id.* at 424–26, 663 A.2d 1256.

The Court concluded that, "[i]n any event, the historical fact that a remittitur has been considered appropriate as to the excess of a verdict over the ad damnum does not demonstrate any substantive invalidity in a judgment that includes that excess." *Id.* at 426, 663 A.2d 1256. Citing *Sullivan v. Jordan,* 310 Mass. 12, 36 N.E.2d 387 (1941), the Court explained:

The issue [in *Sullivan* ] was whether a garnishment action against the automobile liability insurer of the judgment debtor had been brought within the governing one year period of limitations. *Id.* at 14, 36 N.E.2d 387. The insurer contended that the period began on the expiration of the time for appeal following a finding assessing damages against the insured in the underlying motor tort case. *Id.*

The plaintiff contended that the limitations period began to run when the plaintiff filed a waiver of the excess of the damages over the ad damnum and the clerk entered a judgment in the amount of the ad damnum. *Id.* Conclud-

ing that the earlier date triggered limitations, the court gave the following analysis:

"There is no suggestion that the assessment of damages was due to accident or mistake or that a judgment following that finding was not the judgment that the court intended to render. Such a judgment was erroneous in that it did not conform to the amount claimed in the writ, but the defect resulted from an error committed by the court while acting within its jurisdiction, rather than from a finding that the court was without power to make. Accordingly, it has been held that a judgment in excess of the ad damnum is not void but voidable. The defect could have easily been corrected by an amendment to the writ, increasing the ad damnum. No such step was taken. A judgment which at the most is only voidable stands until it is modified, vacated or set aside in direct proceedings brought in some one of the various methods provided by law to accomplish the purpose."

*Id.* at 426–27, 36 N.E.2d 387 (*quoting Sullivan,* 36 N.E.2d at 389). The Court determined that "the ad damnum does not inherently limit the power of the jury to render a verdict and does not inherently limit the power of the court to enter a judgment." *Id.* at 427, 36 N.E.2d 387.

The *Falcinelli* Court then addressed the evolution of case law and rules leading to the present day Rule 8–604(c)(2). *Id.* The statutory predecessor to Rule 8–604(c)(2), Chapter 161 of the Acts of 1811, was "a response to *Harris v. Jaffray,*" in which the *Harris* Court explained:

In the trial court the plaintiff, after verdict and before judgment, could release the excess. *Id.* at 546–47. In the trial court, if an excess judgment were rendered on the verdict, the plaintiff could tender a remittitur during the same term of court, and the trial court could "enter a judgment for the amount of the damages charged in the declaration." *Id.* at 547. "But if a judgment is entered upon the verdict, no release, or other act of the plaintiff, can give validity to that judgment, but on an appeal or writ of error, it must be reversed ...." *Id.*

*Falcinelli*, 339 Md. at 427–28, 663 A.2d 1256 (*quoting Harris*, 3 H. & J. at 546–47).

Responding to *Harris*, the General Assembly enacted Chapter 161, Section 3, of the Acts of 1811, which provided an option to a plaintiff at the appellate level to save a trial judgment that exceeded the *ad damnum* from being reversed on appeal:

[N]o judgment in any case shall be reversed in the court of appeals, because the verdict was rendered and the judgment entered in the court below for a greater sum than the amount of damages laid in the declaration; but the plaintiff below, or his legal representative in the court of appeals, shall be permitted, on motion in that court, in every such case to amend the transcript of the record of proceedings, *by entering a release upon the record, of the damages exceeding those laid in the declaration,* and the court of appeals shall proceed upon such amended transcript, in the same manner, and give the same judgment in the case as if the said release had been entered upon the record before judgment in the court below.

*Id.* (emphasis added).

The *Falcinelli* Court determined that "the assumed defect [a jury verdict in excess of the *ad damnum* ] is procedural only and that did not prevent the judgment from being a final, appealable judgment in the full amount of the verdict." *Id.* at 429–430, 663 A.2d 1256. Therefore, appellate review was limited to whether the trial court had abused its discretion in denying the motion for reconsideration:

That judgment, particularly by denying [appellant's] request for remittitur and by granting leave to amend, rejected [appellant's] legal contention that the judgment on the verdict could not stand in an amount exceeding the ad damnum. Instead of noting an appeal from the final judgment and seeking direct appellate review of *what we assume was an error of law by the trial court,* [appellant] resubmitted the same arguments to the trial court in support of the motion for reconsideration. Thus the appeal

here is from the denial of the motion for reconsideration, and review is limited to whether the trial court abused its discretion in denying the motion.

*Id.* at 430, 663 A.2d 1256 (emphasis added). Therefore, there was no "direct appellate review" of whether judgment on a verdict in excess of the *ad damnum* could stand and the effect of any assumed "error of law" committed by the circuit court in not remitting the judgment in excess of the *ad damnum*. The *Falcinelli* Court, because it did not need to reach the issue, "assume[d], arguendo, that Rule 2–341 does not provide for the grant of leave to amend after a verdict has been returned." *Id.* at 429, 663 A.2d 1256.

After the decision in *Falcinelli,* Judge Lawrence F. Rodowsky, who authored the opinion, wrote to the Court of Appeals Standing Committee on Rules of Practice and Procedure (the "Rules Committee") asking the Committee to consider whether *ad damnum* clauses may be amended post-verdict. Rules Committee, minutes, p. 36 (May 16, 1997).

At a meeting on May 16, 1997, the Rules Committee considered the issue.

[Member Albert] Brault explained that the case of *Falcinelli v. Cardascia,* . . . raised the question of whether an *ad damnum* clause may be amended after a jury verdict. . . . The *ad damnum* clauses have been eliminated in medical malpractice cases to avoid undue publicity and a possible effect on jury awards. Traditionally, Maryland courts have limited recovery to what was requested in the *ad damnum* clause. This puts the defense on notice as to what is at risk. The *ad damnum* clause triggers whether personal monies are at risk beyond the limits of any insurance. The federal policy is that the *ad damnum* clause can be amended to conform to the evidence. The judge has the discretion to amend the clauses upon request.

Mr. Brault said that since the *Falcinelli* case, the Court of Appeals has decided *Scott v. Jenkins,* 345 Md. 21, 690 A.2d 1000 (1997). The Court of Appeals reversed the Court of Special Appeals, holding that the *ad damnum* clause is

binding as to both compensatory and punitive damages. . . .
Mr. Brault commented that to be consistent with the *Scott*
case, either the Rules should provide that the *ad damnum*
clause is binding for all purposes, or it should be eliminated
totally.

The Vice Chair[, Linda Schuett,] pointed out that Judge
Rodowsky took no position on this issue in the letter he
wrote. She also told the Committee that the federal policy
is to allow amendments after a verdict. Mr. Brault added
that the federal rule has been interpreted to allow amend-
ments to conform to the evidence. [Member H. Thomas]
Howell observed that one could plead the requisite facts and
ask for an appropriate amount. He questioned whether a
specific monetary amount is needed in the *ad damnum*
clause. The Chair[, Judge Joseph Murphy,] inquired about
medical malpractice cases. Mr. Brault responded that those
are different, because of the enormous damage amounts
which have been alleged. [Member] Judge John McAuliffe
expressed the view that there should be *ad damnum* claus-
es, which should not be amended after the trial. The Chair
commented that it may be difficult for the plaintiff attorney
to put in an appropriate monetary amount of damages early
on in the case. Mr. Brault suggested that the *ad damnum*
clause could be amended liberally up to 15 days before trial.

Mr. Howell pointed out that the *Scott* case is clear that
punitive damages need to be stated with particularity. The
Chair cautioned that it is important not to run afoul of the
constitutional requirement of fair notice. He asked if the
Subcommittee is making a motion. Mr. Brault answered
that the Subcommittee is not recommending a stand on this,
but it is leaning towards the status quo of pleading a fixed
dollar amount. [Member Robert] Dean inquired what the
trend is in the United States on this. Mr. Brault responded
that the trend is toward the federal view of allowing amend-
ment. The Chair asked Mr. Brault if he wished to require
the complaint to have a dollar amount. Mr. Brault com-
mented that the case law is that nothing can be awarded
which is higher than the dollar amount in the pleading. The

Vice Chair remarked that the pleading could ask for damages in an amount to be proven at trial. Judge McAuliffe noted that the *Falcinelli* case seems to require a specific statement of money damages in the pleading. Mr. Brault said that he had seen cases, such as those to which the Vice Chair just referred, in which the pleading asked for law-equity relief with damages to be calculated at the end of an accounting.

Judge McAuliffe noted that there are other statutory requirements, such as the medical malpractice exception. Rule 2–305 could be amended to state that unless otherwise required by law, the claim for damages in the *ad damnum* clause shall be in a sum certain. He asked if the Rules should provide that amendment of the *ad damnum* clause is allowed after a verdict. The Vice Chair responded that that is the question before the Committee today. Judge McAuliffe moved that there should be no amendments allowed to an *ad damnum* clause after a verdict. The motion was seconded, and it carried with two opposed. Judge McAuliffe moved to amend Rule 2–305 to add the language "unless otherwise required by law, a demand for monetary judgment shall include the amount sought." The motion was seconded, and it passed with four opposed.

*Id.* at 36–38.

The Committee also discussed whether to eliminate Rule 8–604(c)(2).[6] Judge John McAuliffe explained that this rule "covers the situation where there was no motion [to remit the excess judgment over the *ad damnum* ] in the trial level, and the error is alleged on appeal." *Id.* There was no motion to delete Rule 8–604(c)(2). *Id.*

The Rules Committee's proposals concerning Rules 2–305, 2–341, and 8–604(c)(2) were included in the Notice of Proposed Rule Changes to the One Hundred Thirty–Eighth Report of

---

6. Rule 8–604(c)(2) states:

> A judgment will not be reversed because it is for a larger amount than claimed in the complaint if the plaintiff files in the appellate court a release of the excess.

the Standing Committee on Rules of Practice and Procedure submitted to the Court of Appeals on October 2, 1997.

In the Reporter's Note submitted with the proposed amendment to Rule 2–305 the Committee summarized the rationale behind its recommendations:

At the request of the Court of Appeals subsequent to its opinion in *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995), the Rules Committee considered the question of whether an *ad damnum* may be amended after a jury verdict. The Committee recommends that that question be answered in the negative.

An amendment to Rule 2–305 is proposed to make clear that when a party seeks a money judgment, the demand shall include the amount sought, unless otherwise required by law (see, e.g., Code, Courts Article, § 3–2A–02(b)). A proposed amendment to Rule 2–341 prohibits a court from granting leave to amend the *ad damnum* after a jury verdict is returned. The Committee realizes that this recommendation runs contrary to a trend in the federal system and in other jurisdictions to allow amendments to conform to the evidence. The Committee's recommendation is based on its belief in the importance of fair notice.

The Committee also considered whether Rule 8–604(c)(2) is an anachronism that should be deleted. The Committee recommends retention of that subsection because the subsection, together with subsection (c)(3) of Rule 8–604, gives the appellate court discretion to enter the appropriate judgment in the situation where no motion was made at the trial level and the error of a judgment in excess of the *ad damnum* is alleged on appeal.

The Court of Appeals met in conference to consider the proposals presented by the Rules Committee on February 10, 1998. After agreeing to the proposed amendment of Rule 2–305, the Court discussed the proposed amendment to Rule 2–341(b). The Committee proposed to amend the Rule to add that, "The Court may not grant leave to amend the amount sought in a demand for a money judgment after a jury verdict

is returned." The Court rejected the Committee's proposal, finding the amendment too strict. To leave a "little escape valve" for extraordinary circumstances, the Court voted on and passed an amendment to read: "Amendments may be allowed to an *ad damnum* clause after a jury verdict by written consent or by leave of court. Except in extraordinary circumstances, the court may not grant leave to amend." Then a motion to reconsider was made and passed, and, after discussion of what would constitute an "extraordinary circumstance," it was suggested that an affirmative statement be added to the Rule to read, "The court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned." The Court considered that the express statement would clarify that post-verdict amendments are allowed, but they would be governed by the ordinary rules governing amendments, namely that it is a matter of judicial discretion whether to allow the amendment. It was then suggested that, rather than adding the affirmative sentence to the Rule, the statement, instead, be added as a Committee note.

The Court issued a Rules Order on February 10, 1998, stating that the amendment to Rule 2–305 was "adopted in the form previously published," and that the amendment to Rule 2–341 was "adopted in the form attached to this Order." The form attached stated: "AMEND Rule 2–341 to add a committee note that clarifies when a court may grant leave to amend under certain circumstances, as follows: *'Committee note: By leave of court, the court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned.'* "

On February 13, 1998, the Rules Committee summarized the action taken by the Court of Appeals. Addressing the proposed change to Rule 2–341(b) the Committee noted:

The language proposed by the Rules Committee was not added. Mr. Brault asked if leave of court is discretionary, and the Chair replied affirmatively, explaining that it is reviewable under an abuse of discretion standard. Mr. Brault inquired if amendment of the ad damnum clause is

allowed after the trial to conform to the evidence. The Chair answered that this is up to the court's discretion. Mr. Brault remarked that the federal rules allow amendment as long as the issue has been fairly tried. The Chair responded that the Court did not discuss this. He said that he did not think that the Rule would require a judge to amend the *ad damnum* clause. If a judge did amend it, this would be affirmed unless it was an abuse of discretion.

Court of Appeals Standing Committee on Rules of Practice and Procedure, minutes, p. 2 (Feb. 13, 1998).

As a result, Rule 2–341(b) reads, in relevant part, as follows:

A party may file an amendment to a pleading after the dates set forth in section (a) of this Rule only with leave of court. If the amendment introduces new facts or varies the case in a material respect, the new facts or allegations shall be treated as having been denied by the adverse party. The court shall not grant a continuance or mistrial unless the ends of justice so require.

Committee note.—The court may grant leave to amend the amount sought in a demand for a money judgment after a jury verdict is returned. See *Falcinelli v. Cardascia,* 339 Md. 414, 663 A.2d 1256 (1995).

In *Hoang v. Hewitt Ave. Assocs.,* 177 Md.App. 562, 588, 936 A.2d 915 (2007), we addressed the general principles of rule interpretation:

The same fundamental principles of statutory construction apply to the interpretation of a rule. *Zetty v. Piatt,* 365 Md. 141, 152, 776 A.2d 631 (2001). As the Court of Appeals has noted, "First, we must examine the 'words of the rule, giving them ordinary and natural meaning.' Where the language of the rule is clear and unambiguous, our analysis ends." *Id.* (*quoting State v. Harrell,* 348 Md. 69, 79–80, 702 A.2d 723 (1997)). However, the goal of such analysis is always "to discern the legislative purpose.... To that end we must consider the context in which ... the rule appears including related statutes or rules and relevant legislative

history." *Davis [v. Slater,* 383 Md. 599, 605, 861 A.2d 78 (2004)].

After giving the words of Rule 2–341(b), as modified by the Committee note, their ordinary and natural meanings, we do not find the language so clear and unambiguous as to end our analysis of the questions presented in this appeal. Therefore, to resolve any ambiguity as to the "legislative purpose" arising from the Committee note, regarding the "where" and "when" of a motion to amend an *ad damnum,* we consider the context in which the modified Rule 2–341(b) appears, along with the legislative history leading to the adoption of the Committee note and related Rules 1–201(c) and (e), 1–202(i), 2–305, and 8–604(c)(2).

Rule 1–202(i) defines "Court" as "a court of this State and refers, as applicable under the circumstances, to the court (1) to which the title, chapter, or rule applies or (2) in which the particular action or proceeding has been filed or properly could be filed." The word "court" in Rule 2–341(b) and the Committee note clearly pertains to the circuit court because Title 2 governs civil procedure in the circuit courts.

Rule 8–604(c)(2) states: "A judgment will not be reversed because it is for a larger amount than claimed in the complaint *if the plaintiff files in the appellate court a release of the excess.*" (Emphasis added). Nothing in Rule 8–604(c)(2) suggests that a motion to amend the pleadings can be filed in the appellate court to save the judgment in excess of the *ad damnum.* To the contrary, to save the judgment from being reversed on appeal when a judgment is larger than the amount claimed in the Complaint, the plaintiff must release the excess at the appellate level.

■ Rule 2–305 states:

A pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought. *Unless otherwise required by law, a demand for a money judgment shall include the amount*

*sought.* Relief in the alternative or of several different types may be demanded.

(Emphasis added). By retaining that requirement, the Court of Appeals implicitly adopted the Rule's Committee's reasoning that pleading the amount of damages serves the "fair notice" aspect of pleadings. Post verdict amendments to pleadings at the appellate level under Rule 2–341(b) ordinarily would not serve but, rather, undermine the general purposes of pleadings, which are:

(1) [to provide] notice to the parties as to the nature of the claim or defense; (2) [to state] the facts upon which the claim or defense [rests]; (3) [to define] the boundaries of [the] litigation; and (4) [to provide for] a speedy resolution of frivolous claims and defenses.

*Scott v. Jenkins,* 345 Md. 21, 28, 690 A.2d 1000 (1997). Amendment of an *ad damnum* clause at the appellate level renders the requirement that the demand for a money judgment include the amount sought with little or no meaning, and deprives the defendant of notice at the trial level of the amount of damages sought.

■ Rules 1–201(c) and (e), rules of construction, respectively read: "Neither these rules nor omissions from these rules supersede common law or statute unless inconsistent with these rules;" and "Headings, subheadings, cross references, committee notes, source references, and annotations are not part of these rules." Nevertheless, we read the Rules in light of the Committee notes. *Arrington v. Dept. of Human Resources,* 402 Md. 79, 101, 935 A.2d 432 (2007).

■ Before the Committee note was added, the Rules did not expressly provide for, and, at least until 1984, the common law prohibited, amendments to pleadings after the case went to the jury. As noted, the Court of Appeals "assumed" that to be the case as recently as *Falcinelli.* Reading Rule 2–341(b) contextually, in light of the Committee note and the legislative history, we conclude that it was the intention of the Court to permit a *circuit court* to "grant leave to amend the amount sought in a demand for a money judgment after a jury verdict

is returned." At the same time, the Court maintained the requirement that the amount of money damages sought be plead and that, to save the verdict on appeal, any excess of the *ad damnum* be released.

Young–Battle contends that Rule 2–341(b) now permits an amendment to the *ad damnum* clause to be filed in the appellate court when a final judgment in excess of the *ad damnum* has been entered in the circuit court. The Committee note clearly does not provide an appellate court with the discretion to entertain a motion to amend the *ad damnum*. Rule 2–341(b) and the Committee note do not impose a time limit on requests for leave to amend. Notwithstanding the fact that the rule is silent as to when a request for leave to amend may be filed, we are persuaded that failure to file a timely motion in the circuit court cannot be circumvented by a remand to the circuit court of a motion filed in the appellate court after an appealable final judgment has been entered. To the extent that Young–Battle argues that Maryland Rule 8–604(c)(1) permits her to file for leave to amend her Complaint, we disagree. Neither the entry of the excess judgment nor the failure to file for leave to amend in the circuit court is a matter of form. *See Anne Arundel County v. Moushabek*, 269 Md. 419, 424, 306 A.2d 517 (1973); *Owens Corning v. Bauman*, 125 Md.App. 454, 531–32, 726 A.2d 745, *cert. denied sub nom. Owens Corning v. Hammond*, 354 Md. 572, 731 A.2d 970 (1999).

We believe that Young–Battle interprets the procedural effect of *Falcinelli* too broadly. Relying on the Court's holding in *Falcinelli*, that the *ad damnum* "does not inherently limit the power of the court to enter a judgment," she contends that neither amendment to the *ad damnum* nor a remittitur was required in the circuit court. She states:

The arguments in *Falcinelli* were identical to those in this case: "the question arises whether the ad damnum clause, as a matter of substantive law, so limits the extent of a jury's verdict that a judgment, entered by the clerk pursuant to a rule regulating only procedure, is ineffective

as to any excess in the judgment over the ad damnum." 339 Md. at 422, 663 A.2d 1256. "Defendant's argument in this Court rests entirely on the proposition that a remittitur was required as a matter of law." 339 Md. at 430, 663 A.2d 1256.

The Court of Appeals expressly rejected that argument: "[i]n any event the historical fact that a remittitur has been considered appropriate as to the excess of a verdict over the ad damnum does not demonstrate any substantive invalidity in a judgment that includes that excess." 339 Md. at 426, 663 A.2d 1256.

█ Even though the entry of a judgment that was in excess of the *ad damnum* was not automatically void or out of the province of the court's jurisdiction to enter, Young–Battle overlooks the Court's characterization of the entry of such a judgment as an error by the circuit court that is voidable in the absence of an amendment to the *ad damnum* by the circuit court or a release of the excess on appeal.

██ Reading the Rule and Committee note together with related Rules and case law, we conclude that the Committee note provides a plaintiff with a window of opportunity to amend the *ad damnum* in the circuit court before the entry of an appealable final judgment. It does not relieve a plaintiff of the responsibility to seek that amendment. *See Wright v. Commercial and Savings Bank*, 297 Md. 148, 464 A.2d 1080 (1983). The Committee note did not represent a procedural sea change in regard to verdicts that exceed the *ad damnum*. It was in no way a wholesale adoption of something akin to the federal approach and that of some other jurisdictions of routinely allowing amendments that conform to the evidence. By addressing the issue in a Committee note, and leaving Rule 2–305, 2–341(b) and 8–604(c)(2) substantially in place, the Court clearly anticipated that the matter would necessarily be addressed by a motion to amend the *ad damnum* in the circuit court *promptly* "after the jury verdict is returned." Therefore, as a general rule, a circuit court, in the absence of an amendment to the *ad damnum*, commits error by not reduc-

ing the judgment to the amount of the *ad damnum* when the defendant moves for remittitur that directly attacks that part of the judgment in excess of the *ad damnum.*

Rule 2–341(b) provided Young–Battle with ample opportunity in the circuit court to move for leave to amend her pleadings. She could have moved for leave to amend during the trial after she called experts who testified to damages far exceeding the *ad damnum* clause, and, if not then, after the jury verdict in excess of the *ad damnum* was returned, to avoid entry of a voidable judgment. In addition, the opportunity to amend was extended by the post trial motions that clearly invited a motion to amend.

In remanding this case to the circuit court, the panel of this Court in *Bijou II,* slip op. at 14, suggested that the circuit court may have impliedly granted an amendment to the pleadings when it denied the remittitur:

> It might well be argued that the trial court, at least implicitly, remedied that "procedural defect" in its consideration of appellants' motion for remittitur. The trial court's denial of the motion for remittitur could be read to suggest that, had a motion to amend the *ad damnum* been filed, it would have been granted. Put another way, the motion for remittitur became the trial court's vehicle for ruling on the inconsistency between the *ad damnum* clause and the judgment. By denying the remittitur, the court could be said to have tacitly "granted leave to amend the pleadings." Md. Rule 2–341(b), Committee Note (2006).

On remand, the circuit court judge stated that she had not considered her ruling an implicit grant of a request for leave to amend the *ad damnum,* but instead she denied the motion for a remittitur based on a "shock the conscience" analysis.

The fact of the matter is that there was no motion to amend before the circuit court and no amendment was granted. Had leave to amend been sought, the Bijous would have had the opportunity to oppose the amendment, and the court would not have been required to grant it because "decisions about

amendments are discretionary." *Hoang*, 177 Md.App. at 590, 936 A.2d 915.

In the absence of an amendment to the *ad damnum* to conform to the jury verdict, the court erred in failing to grant appellants' motion for remittitur of that part of the judgment in excess of the *ad damnum.* We shall, therefore, affirm the judgment up to the original *ad damnum* amount of $250,000.00, subject to Young–Battle filing a release in this Court of the excess over the *ad damnum,* pursuant to Rule 8–604(c)(2), within 30 days of the filing of this Opinion. We reverse the award of damages exceeding $250,000.00 and, if Young–Battle fails to file a release of the excess judgment, the entire judgment shall be reversed, with prejudice.

**JUDGMENT AGAINST APPELLANTS FOR $250,000.00 AFFIRMED, SUBJECT TO A RELEASE OF THE EXCESS ABOVE $250,000.00 BEING FILED IN THIS COURT IN ACCORDANCE WITH THIS OPINION. SHOULD THE RELEASE NOT BE FILED, THE ENTIRE JUDGMENT SHALL BE REVERSED WITH PREJUDICE. COSTS TO BE PAID BY APPELLEE.**